## J. V. DENNY et al. v. JEFFERSON COUNTY et al., Appellants.

### Division One, December 3, 1917.

1. **COUNTY DEPOSITARY: Rejection of Best Bid.** A selection of the lowest of two bidders to become county depositary, which is the result of bad faith, partiality and favoritism on the part of the county court, each bidder being solvent, doing a safe and lawful banking business and of good reputation, is against the best interests of the taxpayers, illegal, and fraudulent within the meaning of the law.

2. ———: ———: **Trust Company: Doing General Banking Business.** The powers of a trust company embrace the whole field of legitimate banking, with the one exception of receiving money on deposit without the payment of interest; and if it uniformly pays interest on deposits and otherwise observes legal prescriptions, the county court is not justified in rejecting its bid to become the county depositary on the sole ground that it is engaged in a general banking business.

3. ———: ———: ———: **Loaning Money to Director.** A loan of money by a trust company to one of its officers or directors in ex-

cess of ten per cent of its capital stock and surplus is not illegal if approved by a majority of the other directors.

4. ———: ———: **Discretion of County Court: Good Faith.** The county court, in determining which is the best bid made by banking institutions to be selected as county depositary, does not exercise judicial discretion, but is a mere administrative agency of the county; and while its official acts carry with them the presumption that it has done its duty, the presumption applies only to acts within its administrative powers done in pursuance of the legislative purpose, and if the power depends on specific facts their existence may always be controverted, and in so far as it is founded on the exercise of judgment it must be exercised in good faith, reasonably and with regard to the legislative purpose.

5. ———: ———: ———: **Proviso to Statute: Power to Reject All Bids.** The purpose of the statute authorizing the county court to contract with a banking institution for the deposit of county funds (Sec. 3805, R. S. 1909) is to obtain for the public the largest available income from those funds, consistent with their safety and ample security; and the purpose of the proviso, giving to the court the "right to reject any and all bids," was not to give to the court the power to do whatever it might desire to do, but to save from defeat the legislative purpose by preventing combinations of bidders and a division of the funds among themselves in accordance with private agreements, and for use in many other ways in safeguarding the funds; it cannot be used to thwart the legislative purpose and the exercise of good faith which the statute imposes.

6. ———: **Judgment: Awarding Funds to Unsuccessful Bidder.** In an injunction brought by taxpaying citizens to set aside an order of the county court designating the lowest of two equally solvent and competent bidders as the county depositary, and to restrain the county treasurer from depositing the county funds with such bidder, in which neither the State nor any of its prosecuting officers intervene, the circuit court can, for good grounds established, set aside the order and cancel the consequent contract entered into by the county court in pursuance thereto, but having done so it cannot go further and designate the other bidder as county depositary and award to it the county funds.

Appeal from Jefferson Circuit Court.—*Hon. E. M. Dearing,* Judge.

REVERSED (*in part*) AND REMANDED.

*R. E. Kleinschmidt, H. B. Irwin* and *Ernest A. Green* for appellants.

(1) Every presumption is in favor of the county court acting from proper and right motives and the burden is upon the plaintiff to overthrow such presumption by a greater weight or preponderance of the evidence. Beardon v. Miller, 54 Mo. App. 201; State ex rel. v. Flemming, 147 Mo. 10; Martin v. Stoller, 107 Mo. 317; State v. Brown, 75 Mo. 317; State ex rel. v. Weatherby, 45 Mo. 17; Agan v. Shannon, 103 Mo. 661. (2) *Quo warranto* would lie to declare a forfeiture of the Trust Company's charter for misuser and nonuser of its franchise, in doing a general banking business instead of a trust company business, in loaning money without real estate or collateral security and in paying no interest on daily balances. Secs. 1124, 2631, R. S. 1909; State ex inf. v. Oil Co., 218 Mo. 1; 32 Cyc. 427; State ex rel. v. Social Club, 169 Mo. App. 149; State ex inf. v. Jockey Club, 200 Mo. 51; State v. Trust Co., 144 Mo. 562. (3) The statute authorized the county court to exercise its reasonable discretionary powers. The county court did exercise a reasonable and wise dicretion and, under such circumstances, the court will not interfere by mandamus, injunction, prohibition or in any other manner. State ex rel. v. Hawkins, 130 Mo. App. 41; State ex rel. v. Gregory, 83 Mo. 137; State ex rel. v. Fort, 180 Mo. 108; High on Extra. Leg. Rem., secs. 24, 92, 94; Mechem on Pub. Officers, sec. 991. (4) Where discretion is vested in a public officer the courts will not direct how it shall be executed or what conclusion or judgment shall be reached. State ex rel. v. Jones, 155 Mo. 576; State ex rel. v. McGrath, 91 Mo. 386; State ex rel. v. Francis, 95 Mo. 44; State ex rel. v. Harris, 176 S. W. 9. (5) The fact that the successful bidder must file a bond for the faithful performance of its duty does not deprive the county court of a discretionary power or preclude it from rejecting any bid, and the court may, in its discretion, make the award to the lowest bidder to avoid litigation. State ex rel. v. Hawkins, 130 Mo. App. 41; Commonwealth v. Smith, 92 Pa. St. 349; People v. Dorsheimer, 55 How. Pr. 118. (6) The cir-

cuit court has no authority to select a depositary. It can only direct the county court as to its duties in making the selection. State ex rel. v. Harris, 176 S. W. 9; Sec. 3805, R. S. 1909.

*Clyde Williams* for respondents.

(1) Powers and management and control of banks and trust companies. Secs. 1094, 1124, 1098, 1099, 1129, 1125, 1106, 1132, 1111, 1126, 1131, 3002, 3003, 3004, 3006, 9972, 10001, R. S. 1909; Laws 1911, p. 151; Bank v. Hill, 148 Mo. 380; Bank v. Leyser, 116 Mo. 51; Muth v. Trust Co., 88 Mo. App. 596; State ex rel. v. Trust Co., 144 Mo. 562; Stone v. Trust Co., 150 Mo. App. 331. (2) The duty of the county court in the selection of a depositary. Secs. 3729, 3803-3805, 3813, 10886, R. S. 1909; Reagan v. County Court, 226 Mo. 79; Barrett v. Stoddard County, 246 Mo. 501; State ex rel. v. Hawkins, 130 Mo. App. 41; State ex rel. v. Bourne, 151 Mo. App. 104; State ex rel. v. Public School, 134 Mo. 306; State ex rel. v. Adcock, 206 Mo. 556; State ex rel. v. Roach, 230 Mo. 446.

BROWN, C.—This is an injunction suit brought by 450 taxpaying citizens of Jefferson County to set aside an order of its county court designating the Bank of Hillsboro as depositary of the county funds, and to enjoin the county treasurer from depositing such funds or the district or capital school funds thereof in said bank under and by virtue of such order, and to require him to withdraw all such funds as may have by him been deposited in said bank, and to restrain the county court and judges thereof from further recognizing such order, and to require the court to accept the bid of the Jefferson Trust Company, or proceed under the statute to select some depositary of such funds.

The petition states that the county court caused due notice to be given that sealed proposals would be received by it at its May term, 1913, until noon of the first day of said term, from banking corporations, as-

sociations or individual bankers in said county, for the deposit of the county funds for the two years next ensuing after the date of such proposals, and that for the purpose of letting said funds the court divided them into two equal parts. That there were, on the date named in the notice, two bids accompanied by the deposit required by law, one from the Jefferson Trust Company, offering to pay three and one-fourth per cent per annum upon daily balances upon all the funds, and two and three-fourths per cent on one-half the funds should one-half be awarded it; also one bid from the Bank of Hillsboro offering to pay two per cent on daily balances for all the funds. That the county court selected the Bank of Hillsboro as the depositary. It states that the county court gave no consideration to the bids of the Jefferson Trust Company, and took an insufficient bond from the Bank of Hillsboro; that in making its award and approving the bond the court did not act in good faith and with due regard of the best interests of Jefferson County and was actuated and controlled by improper motives. That the injury is irreparable and no adequate remedy exists at law. All this is set out with much detail. The cause was tried on an amended answer which denies generally and specifically the allegations of the petition and states that the Bank of Hillsboro was selected because it was safer, sounder and more responsible and reliable than the Jefferson Trust Company, and that the selection of the Bank of Hillsboro as the depositary was in good faith, without partiality, prejudice or favoritism, and with due regard for the best interests and welfare of Jefferson County and its taxpayers. It also alleged that the Jefferson Trust Company, while incorporated as a trust company, was doing a general banking business, and was guilty of such misuser and non-user of its corporate franchises as to render it unsafe as a depositary of the public funds. The testimony showed that both corporations were of good reputation and solvent. The two judges of the county court who testified in the cause testified freely to those facts.

Certain business acts and practices on the part of the Trust Company were shown in evidence, which are alleged by appellants to be improper and in violation of its charter. These will be noticed under the proper heads in the opinion.

One of the county judges did not testify. The others were present and upon the stand and failed to testify that they knew or believed anything derogatory to the character and financial soundness of the Jefferson Trust Company. One of them testified that he came to the court, on the morning bids were received, ignorant as to who the bidders would be. He did not vote because the other judges voted for the Bank of Hillsboro. Had it been necessary he would have voted the same way. The Presiding Judge had been a stockholder, director and vice-president of the bank when he was elected as judge for the term beginning January 1, 1911, soon after which he sold his stock and resigned as vice-president and director. One of the reasons he gave for voting for the Bank of Hillsboro was that it had always taken care of the warrants when the money was not immediately available in the funds upon which they were drawn. Mr. Williams said that the Presiding Judge (Winer) had told him that he had promised Mr. Donnell, one of the directors of the Bank of Hillsboro, before the election, to give him the money. Judge Winer denied this by saying, "If Mr. Williams says so, I might have done it." Mr. Kidd testified that Judge Winer advised him not to take stock in the Jefferson Trust Company, saying, "It was a Republican scheme, and damned if they could fool him for a moment." George Russel testified that in speaking of his action in awarding the funds to the Bank of Hillsboro, Winer said: "If you ever expect the Republicans to elect you to office, you are left; they will never do it." Other similar statements were in evidence, none of which were denied by Judge Winer. Judge Kerckhoff, the other member of the court, although a defendant, did not testify. The district and capital school funds, not at the disposition of the county

except to loan, amounted to $50,000. The findings and judgment of the court are as follows:

"Now this day come the parties, plaintiffs and defendants, both in person and by attorney, and submit this cause to the court upon the pleadings and proof adduced, and the court being fully advised doth find that at the May term, 1913, of the county court of Jefferson County, Missouri, said county court advertised for bids, as by law provided and required, for the deposit of all the funds belonging to said county for the purpose of selecting a county depositary; that as a result of said advertisement the Bank of Hillsboro, a banking corporation, filed its bids to become the depositary, and its bid was two per cent per annum on daily balances; that the Jefferson Trust Company, a corporation doing a general business, also bid to become the depositary for the funds of said county and its bid was three and one-quarter per cent per annum on daily balances; that no other bid or bids were made; that on the same day the bids were filed they were opened by the county court and the award was then and there let to the Bank of Hillsboro, the lowest bidder; that the Bank of Hillsboro was a solvent institution and its business methods safe and sound; that the Jefferson Trust Company was solvent, its management in the hands of reputable and responsible men, its business methods were safe and sound, and its bid to become the depositary was materially higher than the bid of its only competitor, the Bank of Hillsboro; that both the Bank of Hillsboro and the Jefferson Trust Company are conveniently located for a depositary of the county, both secured against burglary losses, both equally well equipped and equally well managed as banking institutions; that this action was brought by fifty and more reputable, responsible resident taxpaying citizens of said Jefferson County; that the action of the county court in the selection of the depositary was the result of bad faith, partiality and favoritism on the part of said county court, and against the best interest of the taxpayers of Jefferson County; that the action of said

court was illegal, without authority of law or warrant of facts and was fraudulent within the meaning of the law; that the contract entered into by the county court with the Bank of Hillsboro in selecting it as the depositary under the law and the facts is a fraud on the petitioners and the taxpayers of the county; wherefore, the court finds all the issues for the plaintiffs and that petitioners are entitled to the relief prayed for in their petition.

"It is, therefore, ordered and adjudged by this court that the order of the county court awarding and designating the Bank of Hillsboro as depositary be set aside and for naught held; that the county court of Jefferson County select and designate the Jefferson Trust Company of Jefferson County, Missouri, as the depositary, for the county funds, in pursuance to its bid to pay three and one-quarter per cent on daily balances on all money belonging to said county, and that it accept from the said Jefferson Trust Company and approve a good and sufficient bond in the amount required by said court for the faithful performance of its duties as depositary for said county, with the proper conditions, and that upon compliance with the judgment herein, the funds of said county be immediately paid over and deposited in the said Jefferson Trust Company as the depositary for said funds of said county. It is further ordered that the defendant, the Bank of Hillsboro, transfer said funds in its possession to the Treasurer of Jefferson County, or upon the order of the county court of said county."

I. This action is brought with special reference to the provision of section 3729, Revised Statutes 1909, by 450 resident, solvent and responsible taxpaying citizens of Jefferson County. It is directed against the contract by which the county court of that county at its May term, 1913, selected the Hillsboro Bank as the depositary of the county funds during the succeeding two years. It is asserted by the petitioners and

County Depositary: Unwarranted Selection.

found by the court in its judgment that the act complained of was the result of bad faith, partiality and favoritism on the part of the court, and against the best interest of the taxpayers of Jefferson County, and was illegal, without authority of law or warrant of facts, and was fraudulent within the meaning of the law, and adjudged that the order of the court designating the Bank of Hillsboro as the depositary in consideration of the payment of two per cent interest on daily balances be set aside and the Jefferson Trust Company be designated as the depositary in pursuance of its bid to pay three and one-fourth per cent. The Jefferson Trust Company and the Bank of Hillsboro were the only bidders.

We think that the finding of the court as we have stated it was fully justified by the evidence. The members of the county court, both by their statements as witnesses and by their silence, demonstrated to the trial court that in the action complained of they took no cognizance of the public good, that they neither considered nor discussed the effect of their action in connection with the public welfare, nor investigated rumors and facts which, by an afterthought, they now present in justification. On the other hand, the judges who have testified established by their own word the solvency and suitability of the unsuccessful bidder with respect to its resources and management. The ability of its directors to respond to the stringent liability which the law imposes upon them was also well established.

II. The first point in logical order presented by the appellants is that the bid of the Jefferson Trust Company should have been rejected, because, as a matter of fact, as shown in this proceeding, that institution was acting in excess of the powers granted it by its charter: (1) by receiving deposits payable on demand without interest, and (2) by loaning its trust funds without real estate, collateral or other security. It is not denied that it has the power under its

Trust Company: Doing Banking Business.

charter to enter into the statutory contract as deposi-
tary of the county funds, but to use the language of the
brief, "*quo warranto* would lie to declare a forfeit-
ure of the Trust Company's charter for misuser and
non-user of its franchise, in doing a general banking
business," which it is alleged to have been doing in
the petition.

In 1907 the Legislature had the whole subject of
banking before it and treated it in a single act repeal-
ing the following articles of Chapter 12, Revised Stat-
utes 1899, and enacting new articles in lieu thereof:
Article VIII, entitled "Banks of Deposit and Dis-
count;" Article XII, entitled, "Trust Companies,"
and Article XIII, entitled, "Savings and Safe Deposit
Institutions," together with all acts amendatory there-
of, and enacting three new articles, with the same titles,
covering the same matter, in lieu thereof, and amend-
ing Article XX, entitled "State Banking Department."
[Laws 1907, p. 124.] These articles were evidently
intended to cover everything connected with the bank-
ing business of the State subject to State jurisdiction
and control, and are substantially continued in the Re-
vised Statutes of 1909. This law gave the State Bank-
ing Department charge of the execution of the laws re-
lating to banks, private banks and bankers, trust com-
panies and savings and safe deposit companies, and
the *banking business in the State.* In the provisions
relating to each of these institutions their powers are
entwined in a manner that indicates clearly the common
ground covered by all. It was made the duty of the
examiner (R. S. 1909, sec. 1080) "to visit and examine
every bank, private banker and trust company receiv-
ing deposits, except national banks, and every savings
and safe-deposit company." It was also provided
that "for the purposes of this section each such insti-
tution and private banker are hereby denominated
banks." Thus the popular habit of designating the
places in which these institutions received deposits as
"banks" received legislative endorsement. In the ar-
ticle concerning banks of deposit and discount, banks

and trust companies were indiscriminately included. For instance, in Section 1099 it is provided that every person who shall be elected director of a bank or trust company shall qualify within thirty days or forfeit the office. Section 1094 provides with reference to banks of deposit and discount that they "shall be authorized and empowered to conduct the business of receiving money on deposit and allowing interest thereon, and of buying and selling exchange, . . . of loaning money upon real estate or personal property, and upon collateral and personal securities, at a rate of interest not exceeding that allowed by law, and also of buying, selling and discounting negotiable and non-negotiable paper of all kinds, as well as all kinds of commercial paper." Trust companies are authorized "to receive money, in trust and to accumulate the same at such rate of interest as may be obtained or agreed upon, or to allow such interest thereon as may be agreed," and to do the other things which we have mentioned as being within the powers of the banks of deposit and discount, as well as many other things not so included. [R. S. 1909, sec. 1124.] Section 1125, which appeared for the first time as Section 2 of the article relating to trust companies in the Act of 1907, provided as follows: "Every trust company now organized, or which may be hereafter organized shall at all times have an amount of cash on hand and cash due from banks and other trust companies equal to at least fifteen per centum of the aggregate amount of its demand deposits." The same provision as to banks of deposit and discount appears in Section 1098.

While banks of deposit and discount were empowered to receive money on deposit and to allow interest thereon, the trust companies were empowered to receive money *in trust* and to allow such interest thereon as may be agreed. These two propositions were before this court in State ex inf. v. Lincoln Trust Company, 144 Mo. 562, in which it was held that while the power quoted gave to the bank of deposit and discount the right to charge interest or not on its deposits the trust company could only receive deposits upon which it should

agree to pay interest. The use of the words "in trust" instead of the words "on deposit," as in Section 1094, was considered important as differentiating the two transactions. But as was said by BOND, J., in Muth v. St Louis Trust Co., 88 Mo. App. 596, 602; "There seems to be no legal obstacle to the exercise by trust companies of all the functions of ordinary banks as to receiving and paying out deposits of money, provided a rate of interest, however small, is allowed upon the sums so received." [Stone v. Trust Co., 150 Mo. App. 331, 342; State ex inf. v. Lincoln Trust Co., supra.] The money deposited in either case becomes a part of the assets of the institution as a necessary result of the transaction. This was recognized in the Act of 1907 (R. S. 1909, sec. 1125), where it was plainly labeled to that effect in the following words: "Every trust company now organized, or which may be hereafter organized, shall at all times have an amount of cash on hand and cash due from banks and other trust companies equal to at least fifteen per centum of the aggregate amount of its demand deposits." Section 1124 confers upon them the right to buy and sell all kinds of negotiable and non-negotiable paper, and Section 1127 provides that the Bank Commissioner have "and exercise the same supervision, authority and power over all trust companies, as he is now authorized to have and exercise over trust companies which receive deposits."

Their powers cover practically the whole field of legitimate banking, with the exception of receiving money on deposit without the payment of interest. They are sufficient to render innocuous the statement that the Jefferson Trust Company was doing a general banking business. It raises no inference that it was exceeding its charter powers. Nor do we think that the evidence is sufficient to prove that at the time of the letting in question or afterward the company was engaged in handling deposits without the payment of interest. A general order was made by its board of directors on December 19, 1911, fixing the rate of interest on

all deposits at one and one-fourth per cent. This, the secretary testified, had been paid on all accounts closed since that time. If there had been any delinquency in this respect the Bank Examiner does not seem to have noticed it. Had he thought proper to do so, and that the practice of the company required such a course, it was his duty to report it to the Commissioner, who in turn might have brought it to the attention of the Attorney-General, within whose province it was to see that proper proceedings were instituted to see that the practice was discontinued. [State ex inf. v. Trust Co., supra.]

Of the loans complained of the most important is a loan of $8,000 made to one Pounds, to pay for a farm purchased by him from Doctor Denny, the president of the company. The amount was advanced upon a note of Pounds to Denny, secured by deed of trust upon the land, and indorsed by Denny to the bank. The transaction was approved by the directors. The safety of the loan does not seem to be questioned, but its legality is attacked on the ground that it was excessive, and incidentally a question is made as to whether it was a loan to Denny or Pounds, or a purchase of the note with its security. If it was made to Denny, it would seem to come within the following provision of Section 1131, Revised Statutes 1909, to which it has been carried intact from the Act of 1907; "No director or officer of a trust company in this State receiving deposits shall be permitted to borrow any of the money of the trust company in which he is a director or officer in excess of ten per centum of the paid-up capital and surplus without the consent of a majority of the directors of the trust company, other than the borrower, first having been obtained in a regular meeting of the board, said consent to be made a matter of record before the loan is made." Although the only consent proven is a general one, it does not seem to be questioned in the briefs of counsel that it was given in time and manner prescribed by the statute, and we will therefore presume that it was. This provision seems unlimited in its scope, and to permit the loan of the entire

capital to an officer of the company, provided only that its terms are complied with. The appellants do not claim that it was a loan to Pounds. If we consider it as a purchase of the note from Denny, which is the form of the transaction, and we think its substance, it comes directly within the power conferred by Section 1124, which authorizes the corporation "to buy  .  .  .  all kinds of negotiable and non-negotiable paper."

Another class of transactions complained of consists of certain notes to the secretary, Mr. Dietrich, and by him transferred by indorsement without recourse to the Trust Company. This transaction seems also to be covered by the same provision of Section 1124, which we have already quoted.

In this connection one of the appellants' witnesses, Mr. Nichols, vice-president of the American Trust Company of St. Louis, testified that the method employed by his company and the other trust companies of St. Louis and elsewhere in handling loans is that the borrower executes the note to himself and thereupon indorses it and hands it to the cashier who gives him the money. While this testimony is not applicable or competent in this case, it was placed before the trial court and before us without objection, and we refer to it to show that it has not been overlooked.

We have no doubt that the transactions of the Jefferson Trust Company to which we have referred come directly within the power to buy all kinds of negotiable paper. They appear to have been sanctioned by the Banking Department of the State, and do not appear from the testimony to have been improvident or to have resulted in loss. Nor do they appear to have been considered by the county court in making the award in question.

III. Whether or not the county court acted within its discretionary power in awarding this contract involves consideration of the statute under which it acted.

Power to Reject Bids. It is not contended that its discretion was judicial in character, that is to say, such discretion as is possessed by courts whose

272 Mo.—29.

jurisdiction is founded upon notice and opportunity
to be heard. The county court, notwithstanding its name,
is, in this matter, merely an administrative agency of the
county, possessing this power in common with the town-
ship boards. [R. S. 1909, sec. 3803.] As in case of all public
officers, its official acts carry with them the presump-
tion that it has done its duty, until the contrary is made
to appear. But this presumption only applies to acts
within its administrative powers done in pursuance of
the legislative purpose. Where this power depends upon
specific facts, their existence may always be contro-
verted, and in so far as it is founded upon the exercise
of judgment it must be exercised in good faith, reason-
ably and with regard to the legislative purpose.

The purpose indicated in this act is plain, and well
expressed in the simple provision of Section 3805 that
"it shall be the duty of the county court . . . to
publicly open said bids, and cause each bid to be entered
upon the records of the court, and to select as the de-
positaries of the county funds, district school funds and
capital funds, not otherwise invested according to law,
the banking corporations, associations or individual
bankers whose bids respectively made for one or more
of said parts of said funds shall in the aggregate con-
stitute the largest offer for the payment of interest per
annum for said funds. *Provided*, that the court shall
have the right to reject any and all bids." It goes with-
out saying that the purpose of this law is to obtain for
the public the largest available income from its funds.
Their safety in the hands of the depositary is required to
be safeguarded by ample security in addition to the re-
sponsibility of the bank, and it cannot be possible that
the Legislature intended to revoke its simple and per-
emptory command, and by this proviso to substitute a
power in the county court to do whatever it might de-
sire to do. The meaning of the proviso is plain. It means
that whenever, in order to obtain the highest rate of in-
terest reasonably available, it becomes necessary, in the
judgment of the county court, to reject any and all bids
on the whole or any part of the funds, it may do so. Its

obvious utility is to save from defeat the purpose of the law by preventing combinations of bidders by which the funds are divided and the bids determined by agreement among bankers. For this purpose it goes hand in hand with the provision for readvertising for bids, and has proved a healthy measure. This discretion may also be of use in many ways affecting the safety or availability of the funds. [Reagan v. County Court, 226 Mo. 79; Barrett v. Stoddard County, 246 Mo. 501; State ex rel. v. Hawkins, 130 Mo. App. 41; State ex rel. v. Harris, 176 S. W. 9.] But it can never be permitted to substitute a purpose of the court for the expressed purpose of the Legislature, and must always be exercised "in good faith . . . and with due regard for the best interest of the county." As we have already stated, we see no reason for interfering with the finding of the court in this respect, and it follows that the award of the county court was properly set aside.

IV. The judgment in this case must stand entirely upon the provisions of the statute under which the proceeding was instituted and must be maintained. That statute (Sec. 3729, R. S. 1909) prescribes the duty and power of the circuit court as follows: "The circuit court shall make a full investigation of the matters alleged, and shall have power to set aside, reform or cause to be enforced any such contract, or any extension of any such contract, as the court shall deem best under the law and the facts." The subject of the statute is declared by the same section to be "any contract made and entered into by the county court of the county, with any person or corporation, affecting or concerning any public buildings, lands, moneys or property of the county in any manner whatever." The action in favor of these plaintiffs, without the intervention of the State or any prosecuting officers of the State, is purely statutory, depending upon the statute for the right of the plaintiffs to sue and for the remedy to which they are entitled. The only contract in-

*Judgment.*

volved is the contract of the county made through the agency of the county court by the acceptance of the bid of the Bank of Hillsboro and constituting it the depositary of the public funds in consideration of the rate of interest specified. The power of the circuit court is limited to setting aside, reforming or causing to be enforced that contract, and it had no right by mandamus or mandatory injunction *in this proceeding* to compel the county court to make another contract with another person or corporation. State ex rel. v. Harris, supra.] It follows that the judgment of the circuit court in so far it sets aside the order of the county court awarding and designating the Bank of Hillsboro as depositary of the funds to which it relates, is affirmed. In so far as it orders the county court to award and designate the Jefferson Trust Company as depositary for such funds, it is reversed.

The cause is remanded to the circuit court for Jefferson County for final disposition in accordance with this judgment.

*Railey, C.*, concurs.

PER CURIAM.—The foregoing opinion of BROWN, C., is adopted as the opinion of the court. All the judges concur; *Woodson, J.*, in the result.