L. HARRIS et al., Appellants, v. JAMES K. LANG-FORD et al.

Division One, March 28, 1919.

1. **PARTIES TO ACTION:** Public Funds: Injunction: Taxpayers. A suit to cancel an agreement made by the county court by which the funds of a drainage district were to be deposited in a certain bank, on the ground that the court made said agreement without advertising for bids for the funds and that other solvent banks in the county were and are willing to pay a higher rate of interest on daily balances, and praying that the county treasurer be enjoined from depositing the funds in said bank, may be brought by resident tax-paying citizens of the district who sue for themselves and all other taxpayers similarly situated.

2. **DRAINAGE DISTRICT FUNDS:** Depositary: Award Without Competitive Bids. Under the statutes it is the duty of the county court, in selecting a depositary for the funds of a drainage district organized by the county court, to give to banks and trust companies of Missouri the published notice for competitive bids required by Section 3803, Revised Statutes 1909; and an agreement or order by the court directing the funds to be deposited in a certain bank, made without competitive bids or notice, is invalid.

Appeal from Ripley Circuit Court.—*Hon. J. P. Foard,*
Judge.

REVERSED AND REMANDED    (*with directions*).

. *Abington & Phillips* for appellants.

(1) It was the duty of the county court in awarding
the custody of the $29,000 drainage district fund to
select as its custodian the banking corporation, asso-
ciation or individual banker whose bid would constitute
the largest offer for the payment of interest for said
fund. Laws 1915, p. 270, sec. 5607; Secs. 3805 et seq.,
Laws 1915, p. 249.    (2) It was the duty of the county
court in selecting a depositary for these funds to obey
the mandatory provisions of the statute which provides
that the funds of said drainage district shall be deposit-
ed at the highest obtainable interest in some bank or
trust company of Missouri. Laws 1915, p. 271, sec. 5607;
Denny v. Jefferson County, 272 Mo. 436; State ex rel.
v. Bourne, 151 Mo. App. 104; State ex rel. v. LaFayette
Co. Court, 41 Mo. 222; State ex rel. v. Public Schools,
134 Mo. 306; State ex rel. v. Adcock, 206 Mo. 556.
(3) The county court in handling the affairs and finances
of the county cannot be governed by mere whim or
caprice; to the contrary thereof, they act in handling
the affairs of the county as trustees of an express trust;
their duties are defined by law, which they should follow
in performing their official acts.    Denny v. Jefferson
County, 199 S. W. 250;    39 Cyc. 393;    Axman v.
Smith, 156 Mo. 290.    (4) The county court in selecting a
depositary for the other funds of the county is required
to obtain the highest rate of interest possible on daily
balances. The statute provides just how the court shall
proceed in its effort to obtain the highest rate of interest
possible for the deposit of county funds. R. S. 1909, secs.
3803, 3804; Laws 1915, p. 249, sec. 3805.    (5) The

undisputed evidence is that if the county court in the instant case had accepted bids for the custody of this fund, it would have received a higher rate of interest than what it did get by arbitrarily awarding the custody of the funds to the Doniphan State Bank. This being true, it was the duty of the trial court to set the judgment of the county court aside and its failure to do so is error. Laws 1915, p. 271.

*Chas. B. Butler* for respondents.

(1) The county court is presumed to have done its duty in awarding the funds, and the burden of proving otherwise rests upon plaintiffs and has not been done in this case. State ex rel. v. Flemming, 147 Mo. 10; Martin v. Stoller, 107 Mo. 317; State ex rel. v. Fort, 180 Mo. 108. (2) The court must under the statutes exercise its reasonable discretionary powers. It did exercise a reasonable discretion and secured more than the market value in interest for these funds at the time they were let. State ex rel. v. Fort, 180 Mo. 108; State ex rel. v. Hawkins, 130 Mo. App. 41. (3) The courts will not direct inferior courts how to exercise their discretion or what judgment to render, when they are vested by law with discretionary powers, and will not disturb their findings unless gross abuse is apparent. Regan v. Iron Co., 226 Mo. 79; Barrett v. Stoddard Co., 246 Mo. 510; State ex rel. v. Township Board, 188 Mo. App. 266; State ex rel. v. Dreyers, 183 Mo. App. 486; Denny v. Jefferson County, 272 Mo. 436. (4) The demurrer to the petition should have been sustained. The petition shows on its face that the contract made by the court was not a county contract and such as could be inquired into by the circuit court upon the petition of fifty resident taxpaying citizens of the county. Sec. 3729, R. S. 1909. (5) The county court were duly authorized in any way they saw fit to select a depositary. They did not have to give notice and receive sealed bids. The only thing they were required

277 Mo.—34

to do was to obtain the highest obtainable interest for these funds. Sec. 5607, p. 270, Laws 1915.

RAILEY, C.—On May 18, 1916, a petition was filed in the circuit court of Ripley County, Missouri, by more than fifty individuals, as plaintiffs, claiming to be resident, solvent and responsible tax-paying citizens of Drainage District Number 3, in Ripley County aforesaid, against defendants Langford, Harper and Glore, as justices of the county court of said conty, defendant McClain, as treasurer of said county, and defendant Doniphan State Bank, a Missouri corporation doing a banking business in said county. The petition charges the members of the county court aforesaid with making an illegal agreement with the Doniphan State Bank, on May 2, 1916, by the terms of which $29,000, realized from the sale of bonds belonging to Drainage District No. 3 in said county, was to be deposited with said Doniphan State Bank, in consideration of four per cent to be paid by said bank on daily balances, payable monthly.

The petition further alleges that said county court, by an order entered of record, directed McClain, as treasurer of said county, to turn over the proceeds of the sale of said bonds to said bank, and unless restrained from so doing he will turn over the same to said Doniphan State Bank.

It is further averred that there was, on the above dates, three other equally solvent and available banking corporations in said county; that said court, in violation of its duty, neglected and refused to advertise for bids for said funds; that it refused and neglected to take any other steps to secure, for the use and custody of said funds, the highest amount obtainable on daily balances, payable monthly, but upon the contrary, wrongfully, illegally and in violation of the interests of said drainage district and the taxpayers therein, selected said Doniphan State Bank as depositary for said fund; that there were other solvent banks, in said county, who

could and would have, had they been offered an opportunity so to do, bid a higher per cent on daily balances, payable monthly, than that agreed to be paid by said Doniphan State Bank; that if offered an opportunity they will yet do so, etc.

The petition prays for a cancellation of said agreement or contract; that McClain, as treasurer, be enjoined from disposing of said funds, until the termination of this action; that the county court aforesaid be ordered to advertise for bids for the custody of the funds aforesaid, and that it be ordered to award said funds to the highest and best bidder in the manner directed by law and for general relief.

The petition was sworn to by plaintiff, L. Harris, in behalf of himself and co-plaintiffs.

Defendant McClain filed a separate answer, and after admitting most of the allegations in the petition to be true, denied that he will comply with the order of the county court aforesaid, or that he was about to do so. He alleges that he has complied with the law in selecting the Ripley County Bank—a Missouri Corporation located in said county—which is the present depositary of the funds of said county, as the depositary of the funds of said Drainage District No. 3; that he did so, because the Ripley County Bank offered to pay four and a half per centum on daily balances of said fund, whereas the Doniphan State Bank offered to pay only four per centum on daily balances of said fund. He prays for an order directing him to turn over said funds to said Ripley County Bank, etc.

The Doniphan State Bank filed its separate answer, admitting therein its incorporation; that Langford, Harper and Glore are county judges, as alleged; that McClain is county treasurer and ex-officio treasurer of said Drainage District No. 3. It denies every other allegation in the petition. It further alleges that on May 2, 1916, the county court aforesaid selected it as the depositary for said drainage fund; that it secured said fund by a surety bond, duly approved by the county

court; that thereafter said McClain, as treasurer, etc., wilfully and unlawfully refused, and still refuses to permit it to have the custody of said funds; that said treasurer deposited said ·funds in a St. Louis bank, which gave no bond to secure the same. It alleges that the bonds, funds and taxes referred to in the petition belong to Drainage District No. 3, and not to Ripley County; that the persons named as plaintiffs have no interest therein; that they are not resident, solvent and responsible tax-paying citizens of Ripley County, and of Drainage District No. 3, within the meaning of Section 3729, Revised Statutes 1909; that the contract does not affect Ripley County, but only concerns the Drainage District aforesaid. It further denies any bad faith upon its part.

Defendants Langford and Harper filed their separate answer and admitted therein the incorporation of the bank; that they, with Glore, constituted the county court; that McClain was treasurer of the county, etc. They denied every other allegation of the petition. They further allege that they selected the Doniphan State Bank for the depositary of the $29,000 aforesaid, as well as the taxes, sinking and interest funds hereafter to be collected by said drainage district; that they secured said funds by a surety bond, signed by a surety company, admitted to do business in Missouri; that said bond was duly approved by the county court aforesaid. They allege that they acted in good faith in respect to said matter; that McClain, as treasurer aforesaid, unlawfully and in disregard of his official duty, refused to deposit said funds with the Doniphan State Bank, or permit it to have the custody thereof, but deposited same with a bank in St. Louis, Missouri, without any bond to secure the same. The remainder of the answer is similar to that of defendant bank heretofore mentioned. They claim to have acted in good faith and ask to be discharged.

Defendant Glore filed a separate answer admitting that plaintiffs are tax-paying citizens of Ripley County,

Missouri, and that some of them reside in said Drainage District No. 3. He admits that McClain is treasurer of said county; that defendants Langford and Harper are judges of the county court, and that the defendant bank is a Misssouri corporation. He admits that on May 2, 1916, the county court aforesaid entered into a contract with defendant bank, by which said bank was selected as the depositary of the drainage funds aforesaid, at the sum of four per cent on daily balances, and that defendant bank was selected without any competitive bidding and against his protest, and contrary to his demand that competitive bids be asked for and received in said matter.

The evidence in the case will be considered in the opinion.

On July 1, 1916, the trial court found the issues in favor of defendants, and entered a judgment accordingly, dismissing plaintiffs' bill, etc. Plaintiffs, in due time, filed their motions for a new trial and in arrest of judgment. Both motions were overruled and the cause duly appealed by them to this court.

I.    The evidence clearly shows that some of the plaintiffs, at least, are resident tax-paying citizens of Drainage District No. 3, in Ripley County, Missouri. They are prosecuting this action in behalf of themselves, as well as all other taxpayers of said district **Parties.** similarly interested and, in our opinion, have the legal right to do so. [Newmeyer v. Railroad Co., 52 Mo. l. c. 88-9; Dennison v. City of Kansas, 95 Mo. l. c. 429-30; Lilly v. Tobbein, 103 Mo. l. c. 488-9; State ex rel. v. Woodside, 254 Mo. l. c. 586-595; State ex rel. v. Harris, 176 S. W. l. c. 10; Tucker v. Wadlow, 184 S. W. l. c. 71; Webb v. Cope, 192 S. W. l. c. 935; 1 Spelling on Injunctions & Other Extraordinary Remedies (2 Ed.), sec. 678; 1 High on Injunctions (4 Ed.), sec. 372-574.]

II.    Did the county court of Ripley County comply with the laws of this State, in appointing the Doniphan

State Bank as the depositary of the $29,000 of drainage funds belonging to Drainage District No. 3 in controversy here?

Section 3803, Revised Statutes 1909, relating to county depositaries, reads as follows: "It shall be the duty of the county court of each county in this State, at the May term thereof, in the year 1909, and every two years thereafter, to receive proposals from banking corporations, associations or individual bankers in such county as may desire to be selected as the depositaries of the funds of said county. For the purpose of letting such funds such county court shall, by order of record, divide said funds into not less than two nor more than ten equal parts, and the bids herein provided for may be for one or more of such parts. Notice that such bids will be received shall be published by the clerk of said court twenty days before the commencement of said term in some newspaper published in said county, and if no newspaper be published therein, then such notice shall be published at the door of the courthouse of said county:" etc.

Section 3804, Revised Statutes 1909, provides, that: "Any banking corporation, association or individual banker in said county desiring to bid shall deliver to the clerk of said court, on or before the first day of the term of said court at which the selection of depositaries is to be made, a sealed proposal, stating the rate of interest that said banking corporation, association or individual banker offers to pay on the funds of the county for the term of two years next ensuing the date of said bid, or, in the event that said selection shall be made for a less term than two years, as hereinafter provided, then for the time between the date of said bid and the next regular time for the selection of depositaries as fixed by the last proceeding section, and stating also the number of parts of said funds for which such banking corporation, association or individual banker desires to bid. Each of said bids shall be accompained by a certified check for not less than such

proportion of one and one-half per centum of the county revenue of the proceeding year as the sum of the part or parts of said funds bid for bears to the whole number of said parts, as a guaranty of good faith on the part of the bidder, that if his bid should be the highest he will enter into the bond hereinafter provided. Upon his failure to give the bond required by law, the amount of said certified check shall go to the county as liquidated damages, and the court may order the county clerk to readvertise for bids. It shall be a misdemeanor, and punishable as such, for the clerk of said court, or any deputy of such clerk, to directly or indirectly disclose the amount of any bid before the selection of said depositaries.''

This section clearly points out the procedure for bidders desiring to handle county funds.

Section 3805, Revised Statutes 1909, was repealed in 1915, and a new section of the same number enacted in lieu thereof (Laws 1915, p. 249 et seq., approval March 23, 1915), which reads as follows: "It shall be the duty of the county court, at noon on the first day of the May term in 1915, and every two years thereafter, to publicly open said bids, and cause each bid to be entered upon the records of the court, and to select as the depositaries of all the public funds of every kind and description going into the hands of the county treasurer, and also all the public funds of every kind and description going into the hands of the *ex-officio* collector in counties under township organization; the deposit of which is not otherwise provided for by law, the banking corporations, associations or individual bankers whose bids respectively made for one or more of said parts of said funds shall in the aggregate constitute the largest offer for the payment of interest *per annum* for said funds: *Provided,* that the court shall have the right to reject any and all bids. The interest upon each fund shall be computed upon the daily balances with the depositary, and shall be payable to the county treasurer monthly, who shall place the

interest on the school funds to the credit of those funds respectively, and the interest on all other funds to the credit of the road and bridge fund. The county clerk shall, in opening the bids, return the certified checks deposited with him to the banks whose bids were rejected,. and on approval of the bonds of the successful bidder or bidders return the certified check or checks respectively to the bank or banks whose bid or bids are accepted.''

Section 5607 of Article 4 of Chapter 41, Revised Statutes 1909, relating to drainage districts organized by county courts, was repealed in 1915, and a new section of the same number enacted in lieu thereof (Laws 1915, p. 270 et seq., approved March 23, 1915), which reads as follows: ''Whenever there shall be in the treasury any money belonging to any drainage district set apart as a sinking fund for payment of bonds that will not mature and become payable under twelve months' time from the time of accumulation of such funds, the county court wherein such district is located shall, if possible, loan the same for the highest obtainable interest, which rate shall not be less than six per cent per annum, and shall cause the same to be secured by mortgage or deed of trust on real estate, free from all liens and encumbrances, within the county, of the value of double the amount of the loan; any other funds, consisting of sinking funds that will be used within twelve months to pay bonds, and other sinking funds that for any cause have not been loaned as previously provided for in this section, interest, maintenance and other funds of said drainage district shall be deposited at the highest obtainable interest in some bank or trust company of Missouri, where a separate account of each district shall be kept, and all interest that may accrue, from said fund shall be credited to the district: *Provided*, that all such loans shall be made and bank or trust company as depositories selected by the county court of the county in which said district is situated; *and provided further*, that the funds so deposited shall

be secured by a surety bond signed by a surety company admitted to do business in the State of Missouri, which bond shall be approved by the county court, or by a personal bond with such sureties as shall be approved by the county court. In the event that the bond of a surety company is furnished, the expense of the same may be paid by the drainage district.''

The section just quoted requires that the funds mentioned therein shall be deposited in some bank or trust company of *Missouri,* and the interest thereon credited to the drainage district, while Section 3803, Revised Statutes 1909, contemplates that bids shall be received from banks, associations, etc., of the *county,* and Section 3805, as amended by the Laws of 1915, pages 249 and following, provides that the interest collected by the county treasurer belonging to the school funds shall be placed to the credit of those funds, ''and the interest on all other funds to the credit of the road and bridge fund.'' These differences can be obviated by the county court accepting bids from any bank in the. *State* for *drainage funds,* while confining other bids to banks, etc., in the *county;* and by having the county treasurer place the interest collected on *drainage bonds* to the credit of the *drainage district,* while the *other* interest collected shall be credited as indicated in Section 3805, as amended by the Act of 1915, Laws 1915, page 249.

Taking the sections of our statute heretofore quoted as a whole, they are all consistent with the idea that the lawmaking power of our State contemplated that the county courts, in loaning public funds for the purpose of obtaining the highest rate of interest on daily balances, etc., should publish the notice above mentioned and receive from said banks, sealed bids, etc., as required by the foregoing law. The General Assembly, in its wisdom, has apparently worked out a satisfactory plan for dealing with the above questions, and has endeavored to place the county courts under legal obligations to follow the requirements of said laws. We

find nothing in Section 5607, as amended in the Act of 1915, Laws 1915, pages 270 and following, which can be construed as exempting the county court from following the general law supra, in regard to giving notice, receiving sealed bids, etc. It will be observed that the county courts, may, for good cause, in the exercise of a sound judicial discretion, refuse to accept any bid made.

Turning to the facts in the case, we find that the county court, on April 15, 1916, by its order entered of record, directed the county clerk to give notice, by letter, to each of the banks in Ripley County, Missouri, that at noon, on Saturday the 22nd day of April, 1916, at the office of the county clerk, at the courthouse in Doniphan, the court would receive sealed bids for the deposit of the funds of Drainage District No. 3, in Ripley County, Missouri, from any of such banks as might desire to be selected as the depositary for said funds, etc. In other words, the county court *attempted* to follow the *general* law, heretofore mentioned, in respect to the selection of depositaries for county funds.

Mr. Kennon, the county clerk, testified that in compliance with above order he duly notified the banks of said county on April 15, 1916. On April 22, 1916, the county court, by an order entered of record, revoked the above order of April 15, 1916, and recited therein that no bids or proposals for the deposit of said funds should be received at that time. The clerk notified said banks of the above order of the county court revoking the order of April 15, 1916.

On May 2, 1916, *without any other notice having been given to the banks,* the county court, through its order, entered of record, selected the defendant, Doniphan State Bank, as depositary for all funds of Drainage District No. 3, in Ripley County, for a term commencing on the first day of May Term, 1917, of said county court. By the terms of the contract made between defendant bank and the county court, the bank was to pay interest on the funds aforesaid, on daily

balances, monthly, and was to execute a surety bond, of some surety company, authorized to do business in this State, to be approved by the county court.

It appears that Judge Glore, of the county court, was not in favor of making the contract without competitive bids. It also appears from the evidence that the county court was advised by the prosecuting attorney and the attorney of said Drainage District No. 3, before making said contract, that the depositary should be selected after notice had been given to the banks and competitive bids received.

The evidence tends to show that defendant bank was the only one prepared to bid on the day the contract was made. It also tends to show that a higher rate of interest *might* have been obtained if the notice required by law had been given, and competitive bids received from the banks of the county.

There is testimony in the record before us tending to show that the defendant bank was to pay the highest rate of interest obtainable for the use of said funds. According to our conception of the law, however, it becomes our duty to determine whether a contract, based upon the facts before us, can stand the test of judicial criticism, *regardless* of the benefit which might accrue to the Drainage District obtained in violation of the law. It is not our province to inquire into the motives which actuated the members of the General Assembly in passing the foregoing laws. It becomes our duty to construe the latter as we find them, and to enforce the same as written. We accordingly hold that it is the duty of the county courts of our State, in selecting depositaries for drainage funds, to give the statutory notice to the banks mentioned, and to dispose of the competitive bids of such banks as the provisions of law, heretofore mentioned, require.

While the trial court criticised the county court for failing to provide for competitive bidding, it affirmed its action, on the ground, that no *loss* had been sustained by the drainage district. The proceedings of the county

court, in respect to the matters under consideration, are antagonistic to our views of the law, as heretofore expressed, and should not be permitted to stand. We accordingly reverse and remand the cause to the circuit court of Ripley County, Missouri, with directions to set aside the judgment rendered by it; to re-instate the case, and proceed with same, in accordance with the views heretofore expressed.

*Brown, C.,* concurs.

PER CURIAM:—The foregoing opinion of RAILEY, C., is adopted as the opinion of the court. All the judges concur; *Graves, J.,* in the result; *Bond, J.,* not sitting.