In Re Liquidation of Peoples Bank of Butler.

In Re Liquidation of Walton Bank & Trust Company.

In Re Liquidation of Farmers Bank of Bates County, Ed. E. Powell, Trustee, Appellant, v. O. H. Moberly, Commissioner of Finance.—127 S. W. (2d) 669.

Court en Banc, May 2, 1939.*

612

*Silvers & Silvers* and *D. C. Chastain* for appellant.

614

*Lyman J. Bishop* and *H. E. Sheppard* for respondent.

616

PER CURIAM:—The appellant, Ed E. Powell, is trustee of Mount Pleasant Township, a duly organized township of Bates County, which county operates under Township Organization. As such trustee, appellant, being entitled to the custody of the funds of said township, filed claims for preference with respondent, State Commissioner of Finance, for the amount on deposit in each of three banks being liquidated by said Commissioner. Said banks were placed in charge of said Commissioner in April and May, 1934, and then had funds of said township on deposit as follows: Walton Bank & Trust Co., $2,818.97; Farmers Bank, $2,605.94; Peoples Bank, $1,168.71. The commissioner approved said claims and submitted them to the Circuit Court of Bates County for adjudication as to priority. By agreement the three claims were tried as one case. The circuit court rendered separate judgments, denying preference and allowing and classifying them as common claims. Plaintiff appealed to the Kansas City Court of Appeals and that court transferred the case to this court on jurisdictional grounds.

The appeal is properly lodged in this court, both because construction of the revenue laws is involved and an organized township is a political subdivision of the State within the meaning of Article VI, Section 12, and of Section 5 of the 1884 amendment of the State Constitution. [Wright County v. Bank, 30 S. W. (2d) 32.]

Mount Pleasant Township did not designate a depository for

its funds, but deposited them in the three banks named which were acting as county depositaries. Appellant contends that none of these banks was lawfully designated as a county depositary and the township is therefore entitled to a preference, on the theory that the deposits were illegal and that the banks are trustees *ex maleficio*.

The selection of county depositaries is governed by Article IX, Chapter 85, Revised Statutes 1929, Sections 12184-12198, inclusive (Mo. Stat. Ann., pages 6455-65). In brief, they provide: the county court shall select a depositary at the May Term every two years; it shall divide the county funds into not less than two nor more than ten equal parts; cause notice to be published; receive sealed proposals as to rate of interest the banks offer to pay on the funds for the ensuing two years; the bids to be accompanied by certified checks, etc.; the bids shall be publicly opened and recorded on the first day of the May Term and a depositary or depositaries be selected on condition that the specified bond be executed and approved; Section 12188, provides that if a township board fails to select a depositary its funds shall be deposited in the county depositary. Other provisions of the statute are not material to the present discussion.

We have held the requirements of these statutes mandatory and that a failure of compliance prevents title to the public funds passing to the bank and the relation of creditor and debtor arising. [Harrison Twp. v. People's State Bank, 329 Mo. 968, 46 S. W. (2d) 165; In re Cameron Trust Co., 330 Mo. 1070, 51 S. W. (2d) 1025; Marion County v. Bank, 336 Mo. 675, 80 S. W. (2d) 861; White v. Greenlee, 330 Mo. 135, 49 S. W. (2d) 132; Denny v. Jefferson County, 272 Mo. 436, 199 S. W. 250; Huntsville Trust Co. v. Noel, 321 Mo. 749, 12 S. W. (2d) 751.] We have also held that a literal compliance with all the statutory provisions is not required, if no public or private right is prejudicially affected. [Boone County v. Cantley, 330 Mo. 911, 51 S. W. (2d) 56; Wright County v. Bank, 30 S. W. (2d) 32; Henry County v. Salmon, 201 Ho. 136, 100 S. W. 20; Town of Canton v. Lewis County Bank, 338 Mo. 817, 92 S. W. (2d) 595; Mitchell v. Bank of Ava, 333 Mo. 960, 65 S. W. (2d) 99; School Dist. of St. Joseph v. Bank, 325 Mo. 1, 26 S. W. (2d) 785.]

The appellant has briefed and argued no less than seventeen reasons why he contends that the statutes were not complied with. We now condense and discuss them in order. They are: (1) that no preliminary order was made by the county court dividing the funds into not less than two nor more than ten equal parts; (2) that the notice calling for bids was insufficient; (3) that the bids were improperly submitted; (4) that the selection of depositaries were not properly made; (5) that the bonds were not given in time, did not contain the proper recitals, one of them was not properly executed and the sureties on another were insufficient; (6) that there was collusion among the bidders.

618

■ (1) As to the absence of a preliminary order for division of the funds: appellant has cited us no case and we have found none ruling this point. The fact that one bank bid for ten tenths and the other two banks for three tenths each shows that the bidders were familiar with the statute in this respect, and, as the county court awarded four tenths to one bank and three tenths each to the other two banks, we fail to see how any public or private right was prejudicially affected.

■ (2) The question as to the notice for bids is more serious. It was published for the required length of time and was correctly worded, except that it stated that bids would be received up to noon on May 5, 1931, for a term "extending to the May Term, 1931. . . . The successful bidder to comply in all things with the provisions of Article 8, Revised Statutes of 1919."

Appellant contends that this notice was misleading in that the bidder might think he was bidding for a short time; further, that the notice is not aided by the reference to the statutes, for there were many articles numbered eight in the 1919 statutes relating to various subjects. Appellant cites Harris v. Langford, 277 Mo. 527, 211 S. W. 19. That was a suit by taxpayers against the county court of Ripley County to cancel a contract between the court and the Doniphan State Bank and to enjoin the county treasurer from turning over to said bank the funds of a drainage district and to order the county court to advertise for bids and award the funds to the highest and best bidder. The county court on April 15th had ordered the clerk to notify all the banks in the county by letter that on April 22nd bids would be received for the selection of a depositary for said funds. The clerk mailed these notices, but on April 22nd the court revoked this order and ordered that no bids be received. The clerk notified the banks of this last order. Then, on May 2nd, without *any* notice having been given the county court selected the Doniphan State Bank and entered into the contract complained of. The trial court's judgment was for defendants and we reversed and remanded the case. We held in In re Cameron Trust Co., 330 Mo. 1070, 51 S. W. (2d) 1025, that a school district was entitled to a preference against a closed bank where *no* notice had been given for the selection of a depositary, but we reached a somewhat different result in the case of Wright County v. Farmers' & Merchants' Bank, 30 S. W. (2d) 32. The latter case was a suit on a depositary bond. A bank which had been legally selected as a depositary failed and defendant bank was organized and took over the assets. Then, without *any* notice and without the receipt of a written bid, the county court selected the defendant bank as depositary and it gave the bond which was sued on. Without deciding that defendant bank had been legally selected as depositary, we held it was a *de facto* depositary and the sureties on the bond were liable. In re North Mo. Trust Co., 39 S. W. (2d) 415, was a case decided by the St. Louis

Court of Appeals. A school board, without *any* advertisement or bids, made a contract for the deposit of its funds in a bank which secured the same with a surety bond. The bank failed, the surety company paid the school district and took an assignment of the claim for which it asked a preference. The point was raised, but not decided, that the assignment did not carry with it the district's right, if any, to a preference. The court held that the bank was a *de facto* depositary and denied the preference. We cited this case with approval in Boone County v. Cantley, 330 Mo. 911, 51 S. W. (2d) 56.

Harris v. Langford, supra, was a *direct* attack upon the order of the county court for the selection of a depositary and it was alleged that the absence of notice prevented other bids offering a higher rate of interest from being received. In the present case the plaintiff stands upon a different foundation. The plaintiff, Mount Pleasant Township, had the option of either selecting its own depositary or placing its funds in the depositary selected by the county court. It chose the latter course and is now, in this *collateral* proceeding, attacking the validity of the proceedings in the county court. If this were a direct proceeding to cancel the contract and it could be shown that the imperfections of the notice reduced the number of bidders and prevented the county court from obtaining the best contract a different question would be presented. We do not say that plaintiff is completely estopped, but we do say that, in this equitable proceeding, these are considerations which should not be ignored. In neither Harris v. Langford, supra, nor In re Cameron Trust Co., was any notice given. In the present case an attempt was made to comply with the statute in the publication of a notice. Certainly the banks which submitted bids were not misled by the imperfections of the notice and no claim is made that other banks were prevented from bidding. We rule this point against the appellant.

▮ (3) Appellant contends that the bids were improperly submitted, for the reasons: that they did not offer interest for a period of two years or any other period; that they were not accompanied by *certified* checks nor checks in sufficient amount.

The county court accepted the bids on the agreement that each bank pay interest at two per cent for a period of two years and the bonds contained that provision. The checks which were submitted with the bids served their purpose when the bids were accepted and the bidders entered into contracts in compliance therewith, that purpose being to protect the court in the event the bidder failed to comply. On approval of the bonds the checks were returned to the bidders and the nature and amount of the checks are immaterial.

▮ (4) Appellant contends that the selection of depositaries was not properly made. The People's Bank bid for all the funds at two per cent. Each of the other two banks bid for three-tenths of the funds at one and three-fourths per cent. The county court opened the

bids on May 6th, being the first day of the May Term, 1931, and entered an order designating the Peoples Bank as depositary and the other two banks as *sub*-depositaries, that the county treasurer deposit four-tenths of the funds in the Peoples Bank and three-tenths in each of the others, that the Peoples Bank act as clearinghouse for all, and that each bank make bond for $24,000 to be approved by the court.

On August 31, 1931, the court again entered an order that "the designated depositaries each furnish bond in the sum of $24,000, each bond to be secured by not less than five owners of unencumbered real estate, of value equal to the amount of the bond or more."

Each bank filed its bond for the proper amount and each stating that interest should be paid on daily balances at two per cent per annum for two years. By orders of record the bonds of the Peoples Bank and the Farmers Bank were approved on September 8th and the other bank on September 14, 1931.

Appellant objects: that there is no authority for the selection of *sub*-depositaries; that the court was without authority to divide the funds as it did without rejecting the bids and readvertising; that the clearinghouse was not properly designated; and that no order was made designating the depositaries *after* the filing of the bonds.

There is no provisions in the statutes for sub-depositaries, but it is clear that the court intended and really did select all the banks as depositaries and one of them to act as clearinghouse (Sec. 12190). The court was not under the mandatory duty to let all the funds to the high bidder, the Peoples Bank. Nor do we think it was required to reject the other bids, as being too low, and readvertise (Sec. 12191). In effect, the court permitted the other two banks to amend their bids and offer a higher rate of interest. The court has some discretion in such matters. [State ex rel. v. Harris, 176 S. W. 9; Regan v. County Court, 226 Mo. 79, 125 S. W. 1140.] There is no claim that the court exercised its discretion arbitrarily. On the contrary, the wisdom of the court in thus dividing the funds is shown by the fact that Bates County had at the time of the trial received payment in full for its funds on deposit in the Farmers Bank, and the Walton Bank, but not in the Peoples Bank.

Of course, the designation of the depositaries, was not complete until the filing and approval of the bonds. The order for final designation mentioned in Section 12188 was not made *after* the filing of the bonds, but the original order designated the depositaries on condition that the bonds be filed and approved. When the bonds were later filed they were approved as "depositaries bonds" by orders entered of record. This was a substantial compliance with the statute.

(5) Appellant objects: that the bonds were not given within ten days after the designation of depositaries. We have ruled that this is not mandatory. [School Dist. v. Bank, 325 Mo. 1, 26 S. W. (2d)

785; Henry County v. Salmon, 201 Mo. 136, 100 S. W. 20; Mitchell v. Bank of Ava, 333 Mo. 960, 65 S. W. (2d) 99.]

█ That the bonds did not contain proper recitals: By this appellant means that the bonds did not expressly provide for the protection of township funds.

Each bond recites that the bank has been duly selected as depositary of the funds of Bates County for a period of two years in accordance with the provisions of Article IX, Chapter 85, of the Revised Statutes of Missouri, and is conditioned for the faithful performance of all duties devolving by law, and for the payment of all checks drawn by the proper officers of said county, etc.

As before stated, the township board had the option of selecting a depositary or of adopting the county depositary. When the board chose to adopt the county depositary, no statute required or authorized the county court to compel the filing of new bonds expressly protecting township funds. The bonds already guaranteed "performance of all duties devolving by law" and under Section 12188 one of those duties was and is the protection of the funds of a township which fails to select its own depositary. [Wright County v. Bank, supra; Henry County v. Salmon, supra; Mitchell v. Bank of Ava, supra.]

█ Appellant claims that the bond of the Walton Bank was not signed by the principal until after the bank had closed. The record does not sustain that claim. The bond was filed and approved on September 14, 1931. At that time it contained the signatures of the sureties, including the president, secretary and at least some directors of the bank. On November 4, 1931, by resolution of the board of directors, duly spread upon the bank records, the president and secretary were instructed to sign the bank's name to the bond. They did so, but not until February, 1933. In December, 1932, the Mayor of Butler issued a proclamation declaring a bank moratorium. While this was without legal authority, the banks consented and remained closed for a short period, but at the various dates when the bond was filed, when the board of directors ordered it signed by the president and secretary and when they signed it, the bank was open and under the control of its officers and directors.

Appellant cites Bunn v. Jetmore, 70 Mo. 228; and North St. Louis B. & L. Association v. Obert, 169 Mo. 507, 69 S. W. 1044. They announce the general rule, to which there are exceptions, that sureties are not bound unless the principal is bound, but they have no application here. The Walton Bank would have been bound even in the absence of a bond. The mere receipt of deposits made the bank liable and its signature imposed no additional liability. Besides, the absence of the bank's signature was an inadvertence which was properly corrected before any liability accrued to the sureties. [Bank v. Harrison, 321 Mo. 815, 12 S. W. (2d) 755; Clark County Sav. Bank v. Trust Co., 24 S. W. (2d) 1065; White v. Greenlee, 337 Mo. 514, 85 S. W. (2d) 112.]

 Appellant claims that the sureties on the bond of the Farmers Bank did not own unencumbered real estate equal to the amount of that bond. The county court ordered the bank to give bond "secured by not less than five owners of unencumbered real estate of value equal to the amount of the bond," and by order later approved the bond which was filed. Assuming, but not deciding, that plaintiff can in this proceeding attack the finding of the county court, the burden is on him to prove the insufficiency of the bond. Much of plaintiff's evidence was devoted to this purpose, but the trial court found against him. The trial court filed a written opinion in which, among other things, it is said: "The evidence tending to show this bond invalid comes from those who, as sureties on the bond, would benefit from the allowance of these claims as preferred. Their evidence, in which they insist they do not own sufficient real estate, after qualifying before the county court as owning same . . . does not impress a court of equity. To again appropriate some of the language found in the Boone County case the court can say: 'There is not the slightest doubt that the bond afforded and now affords ample security for the repayment of all public funds for which it was given as security.'"

 (6) Appellant contends that the three banks entered a conspiracy, prior to the bidding, and obtained the deposits by means of a fraudulent and collusive agreement. Appellant does not claim, and there was no evidence, that the county court had knowledge of or was a party to any such agreement; nor that the rights of the public or any individual were injuriously affected thereby. Again assuming, but not deciding, that plaintiff could raise this point (18 C. J., p. 585, sec. 53F) he wholly failed to sustain his contention by the proof. On this question the trial court said: "There was evidence from the officers of two of the banks which officers were also sureties on the bond, that there was collusion among the bidders, in that it was agreed what each should bid. There is no showing that the county court was a party to this, or that they had knowledge of it. It appears to the court that it would be inequitable to allow these parties, by their own act, to thus relieve themselves from liability on the bond."

In the selection of depositaries the county court failed in many particulars to literally comply with the statutes, but there has been no showing that any public or private right has been violated thereby. There has been no showing that the plaintiff will be injured by the denial of a preference. On the trial the circuit court found that the bonds were then sufficient to secure the public funds. Most of the attack in the trial court on the validity of the selection of the depositaries came from the sureties who will be relieved from paying if a preference is granted to plaintiff. These sureties are officers, directors and stockholders of the banks which received the benefit of the deposit of the township funds. The banks assumed to act as depositaries, accepted the benefit, and it would be inequitable on the record

before us to hold that they are not depositaries in fact. Especially as the bonds recited that the banks had been duly designated as depositaries. [18 C. J., p. 591, sec. 66F.]

The judgment and decree of the trial court is affirmed.