HUNTSVILLE TRUST COMPANY, by S. C. CANTLEY, State Commissioner of Finance, in Charge, v. W. P. NOEL, FRANK LYONS, THE COUNTY OF RANDOLPH, GEORGE G. HALLIBURTON, B. H. SHIFLET and W. P. SPARROW, Appellants.—12 S. W. (2d) 751.

Division One, December 31, 1928.

750

*J. Austin Walden* and *Willard P. Cave* for appellants.

*Philip J. Fowler* and *Hunter & Chamier* for respondents.

752

RAGLAND, J.—This seems to be a suit in equity. It was instituted by the Commissioner of Finance of the State of Missouri, having in possession and charge, for the purpose of liquidation, the assets and property of the Huntsville Trust Company of Huntsville, Missouri (hereinafter called the Trust Company), against Randolph County, the Judges of the County Court, the Clerk of the County Court and the County Treasurer of that county. The petition alleges that in May, 1927, the Trust Company, having been designated a county depository by the County Court of Randolph County, entered into an agreement with that court whereby it pledged to the county Liberty Bonds of the United States of the face value of $22,500, to secure the performance of its obligations as county depository; and that pursuant to such agreement the Trust Company did deliver to the county clerk for the county said bonds, which were a part of its general assets. The relief sought is: that said county officers be enjoined and restrained from selling or disposing of said bonds; that the contract entered into between the Trust Company and the county court be vacated and annulled; and that the bonds be declared the property of the Trust Company, discharged from the purported pledge lien, and ordered restored to the Trust Company.

The facts are not complicated. On May 27, during its regular May term, 1927, the County Court of Randolph County proceeded to

open the bids of banking corporations who desired to be selected as depositories of the funds of the county, the funds having previously been divided by order of record into two equal parts. There were two bids. The Trust Company offered, for the deposit of $30,000 of the county's funds, to pay interest monthly at the rate of four per cent computed on daily balances, the deposit to be secured by United States bonds of the par value of $22,500 and a surety bond for $7500.

The second bid was that of the Farmers & Merchants Bank of Huntsville. It made application for half of the county's funds and offered to pay interest on daily balances at the rate of two per cent per annum payable on the first of each month. This bid was accepted, and subsequently, according to the recitals of the records of the county court, the Farmers & Merchants Bank delivered to the county clerk $40,000 in bonds of the United States and executed in connection therewith an agreement pledging said bonds to Randolph County as security for the faithful performance of its duty as a depository; thereupon such security was duly approved and the said Farmers & Merchants Bank constituted a county depository for one-half of the county's funds.

The bid of the Trust Company was rejected, on the ground that it did not ''conform to the statutes in such cases made and provided;'' and the clerk was directed to ascertain what terms could be obtained for half of the county's funds as provided by Section 9587, Revised Statutes 1919. The proceedings had thereafter with respect to the selection of a depository for such half of the funds are disclosed by the record of the county court of date, June 27, 1927, as follows:

''It further appearing before the court that in response to the solicitations of the Clerk of Randolph County, Missouri, for bids for the remaining half of county funds, the highest and best bid so received, which said bid is now opened and laid before the court, is that of the Huntsville Trust Company, of Huntsville, Missouri, which has been heretofore filed with the Clerk of County Court on this the 27th day of June, 1927, which said bid is for one-half of said county funds from this date until sixty-five days after the time fixed by law for another selection as provided by Article 8 of Chapter 86 of the Revised Statutes of Missouri for the year 1919, entitled, 'County Depositories,' to-wit: until fourth Monday in May, 1929. It appearing that said bidder offers to pay for said funds at the rate of two per cent per annum upon daily balances, payable monthly.

''Therefore, it is ordered and adjudged by the court that the bid of said Huntsville Trust Company as aforesaid as depository of said funds be accepted for one-half of said county funds at said

rate for said period, and the bond of said Huntsville Trust Company be fixed at the sum of forty thousand ($40,000) dollars.

"And now comes the said Huntsville Trust Company on this date and deposits with said court bonds and securities totaling the amount of forty thousand dollars ($40,000) as follows, to-wit:

"A bond in the sum of $10,000 signed by E. C. Tieman, C. P. Fullington, C. A. Fleming, J. T. Epperly, Callie Halliburton, G. H. Jackson as securities and a bond in the sum of $7500 signed by Aetna Casualty & Surety Co., authorized to do business in the State of Missouri, as surety in the sum of $7500, and a pledge agreement pledging bonds of the United States to Randolph County, Missouri, in the total amount of twenty-two thousand and five hundred dollars ($22,500), and, it further appearing that said bonds have been delivered to the County Clerk of Randolph County, Missouri, and said bonds and said pledge agreement having been examined by the court and having been found by the court to be sufficient under the law, it is by the court, further ordered and adjudged that said bonds and said pledge agreement of said Huntsville Trust Company be and the same are hereby accepted and approved and it is further ordered and adjudged that said Huntsville Trust Company is hereby accepted and constituted a county depository for one-half of the county funds from this date until sixty-five days after the time fixed by law for another selection as provided by Article 8 of Chapter 86 of the Revised Statutes of Missouri for the year 1919, entitled, 'County Depository,' to-wit: until sixty-five days after the fourth Monday in May, 1929."

On June 27, 1927, the date of its selection as a county depository, as just set forth, the Trust Company was already a county depository through a previous selection, and presumably had been for a period of two years; its term through such previous designation was expiring. There was then on deposit with it approximately $48,000 of the county's funds. There are intimations in the record that the Trust Company was at that time in a failing condition, if not actually insolvent. Notwithstanding, it had on deposit with the First National Bank of St. Louis approximately $60,000 and was preparing to pay over to the county the balance owing by it as county depository, if it failed of selection as such for another term. The funds on deposit with the First National Bank of St. Louis were for the most part proceeds of a loan which it had obtained from that bank by pledging a substantial part of the Trust Company's general assets. It drew on that fund to purchase the $22,500 of United States bonds; and it bought those bonds to offer as security as county depository in the event it was again selected.

On November 26, 1927, the Commissioner of Finance took charge of the Trust Company for the purpose of liquidating its assets and

winding up its affairs. On that date Randolph County had to its credit with the Trust Company, as county depository, the sum of $24,130.94. Thereafter the county court made demand of the Trust Company and the commissioner in charge for the repayment to it of said sum. The demand not being complied with the county court ordered the United States bonds in question to be sold and the proceeds applied in accordance with the pledge agreement. Thereupon this suit was brought to enjoin the sale of the bonds and require their return to the Trust Company. The trial in the circuit court resulted in a decree granting the relief prayed, and this appeal on the part of defendants followed.

The foregoing outlines the case in a general way. Other facts, if necessary to an understanding of the legal questions involved, will be noted in the course of the opinion.

I. Plaintiff's case proceeds on the theory that the deposit by Randolph County with the Trust Company of county funds constituted a general deposit, as distinguished from a special deposit. With this as the major premise it is argued that a trust company in this State has no power, either express or implied, to pledge its assets to secure a general deposit; that any such pledge made by it is not only *ultra vires*, but against public policy; and that it is not estopped therefore to plead *ultra vires* when it seeks a recovery of assets so pledged. The soundness of the general doctrine implied may, for all purposes of this case, be conceded. It may also be conceded that the deposit in question had some of the attributes of a general deposit in bank; but primarily it was a deposit of county funds in what was assumed to be a county depository and the questions involved must be ruled from that standpoint.

All county funds of every kind and description are required to be deposited in a county depository. [Art. 8, Chap. 86, R. S. 1919.] Before any bank or trust company can qualify as such depository it must give the security prescribed by Section 9585, Revised Statutes 1919. That section is as follows:

"Within ten days after the selection of depositories, it shall be the duty of each successful bidder to execute a bond payable to the county, to be approved by the county court and filed in the office of the clerk thereof, with not less than five solvent sureties, who shall own unencumbered real estate in this State of as great value as the amount of said bond, or with a surety or trust company authorized by the laws of this State to execute bonds as surety: *Provided*, that the court may accept in lieu of real estate as security bonds of the United States or of the State of Missouri, which said bonds shall be deposited as the court may direct; the penalty of each depository's bond to be not less than such proportion of

the total annual revenue of said county for the years for which such bond is given as the sum of the part or parts of the funds awarded to such bidder selected respectively bears to the whole number of said parts (the amount of the bond to be fixed by the court), and said bond shall be conditioned for the faithful performance of all the duties and obligations devolving by law upon said depository and for the payment upon presentation of all checks drawn upon said depository by the proper officers of said county or any township whenever any funds shall be in said depository, and that all interest will be paid promptly, and that all said funds shall be faithfully kept and accounted for according to law; and for a breach of said bond the county or any school district or township of said county or any person injured may maintain an action in the name of the county, to the use of the complainant.''

Now if this section authorizes a bank selected as a county depository to give, and the county court to accept, United States bonds under a pledge agreement, conditioned for the faithful performance by the depository of all its duties and obligations as such, then this case is at an end. Whether or not the section furnishes such authorization raises a question of construction.

The original County Depository Act, including what is now Section 9585, was passed in 1889. The section has undergone amendment from time to time but is in substantially the same form as originally enacted with the exception of two major amendments. In 1891 there was inserted, as it now appears, this proviso: ''Provided, that the court may accept in lieu of real estate as security bonds of the United States or of the State of Missouri, which said bonds shall be deposited as the court may direct.'' [Laws 1891, p. 104.] In 1915, the words ''or with a surety or trust company authorized by the laws of this State to execute bonds as surety'' were inserted in the place where they now appear. The amendment of 1891 is the one with which we are concerned. What did the Legislature intend when it said that ''the court may accept in lieu of *real estate as security* bonds of the United States?'' This language unquestionably refers to the preceding provision that, in addition to the principal, the bond shall be executed by ''not less than five solvent sureties who own unencumbered real estate in this State of as great value as the amount of the bond.'' As respondent construes the proviso, it does not dispense with either bond or sureties, but merely permits the court to accept sureties who do not own real estate, if they, the sureties, will deliver to the court United States bonds ''of as great value as the amount of the bond.'' This construction seems both awkward and strained. It will be noted that the section nowhere provides for the taking of *real estate* as security. The five sureties who own real estate do not by

signing the bond place a lien or charge upon their real estate. The *security* afforded by the bond, and the only security afforded by it, is the joint and several *personal liability* of sureties who own real estate. It is in lieu of *that security* that the ·statute authorizes the taking of bonds of the United States. It would follow, therefore, that the proviso authorizes the court to take Government bonds in lieu of the security afforded by a bond signed by sureties who own real estate.

The portion of the section following the proviso, prescribing the penalty of the bond, its conditions and who may sue on it, remains substantially as it was before the proviso was inserted. From this it is contended that a bond is always required and consequently that State or Government bonds can never be taken in lieu of it. Before the amendment the section dealt solely with a bond. Its provisions, outside of the proviso, still relate to a bond. If the proviso, permitting Government bonds to be taken as security in lieu of a bond with sureties, had been placed at the end of the section instead of being thrust into the middle of it and thereby breaking the connection between the provisions relating to a bond, the present contention could not have arisen. Notwithstanding the proviso was placed where it is, the meaning of the section as a whole reasonably appears to be as we have construed it.

In construing Section 9585, we have but followed the practical construction put upon it for years—first by the State Banking Department and later by the Commissioner of Finance. If the construction is wrong, county courts have been misled by it; and as a result the funds of many counties of the State are in jeopardy. Under such circumstances the construction should not be declared erroneous unless it plainly and palpably appears to be so; and that cannot be said. If it does not comport with the intention of the Legislature, the remedy lies in its hands.

II. If it were·held that a bank or trust company is without authority to pledge United States bonds constituting a part of its assets to secure the performance of its obligations as a county depository, the result, so far as this case is concerned, would not be materially different. When the Trust Company was selected as a depository for another two-year term, in June, 1927, and the security it tendered in that connection was accepted by the county court, the county funds then on deposit with it were in effect deposited anew. As heretofore stated all county funds are required by law to be deposited in a county depository. The officers of the county charged with duties relating to the deposit of such funds for safe-keeping are agents of limited powers and as such they have no authority to deposit these public moneys with any other than a county

depository. Now a bank or trust company does not become a county depository merely by being designated as such in an order of the county court; it must qualify as a depository by giving the security prescribed by Section 9585. If therefore the Trust Company had not so qualified on June 27, 1927, the deposit of the county funds with it was unlawful; and it, in receiving such funds under color of being a county depository, wrongfully obtained possession of them. The county moneys so obtained thereupon became, in the hands of the Trust Company, a trust fund by operation of law. These funds entered into, became commingled with and to that extent augmented the Trust Company's assets as a whole. Such assets may therefore be impressed with the trust to the extent of the funds so wrongfully obtained and commingled with them.. [See Harrison v. Smith, 83 Mo. 210, 215; Bank v. Brightwell, 148 Mo. 358, 365; Page County v. Rose, 130 Iowa, 296; Fire & Water Commrs. v. Wilkinson, 119 Mich. 655; Cherry v. Territory, 17 Okla. 221. See, also, Leach v. Exchange Bank, 203 N. W. (Iowa), 31, 36; and State v. Foster, 29 L. R. A. (Wyo.) 226, 250.]

Under this view of the case nothing would be gained by allowing the Trust Company to recover the pledged assets in this action and remitting Randolph County to its suit in equity to obtain the relief to which it is entitled. Circuity of action can be avoided by permitting the county to proceed with its foreclosure of the pledge lien.

The conclusions reached herein require that the judgment of the circuit court be reversed. It is so ordered. All concur.