SCHOOL DISTRICT OF ST. JOSEPH v. SECURITY BANK OF ST JOSEPH ET AL.; R. I. BILBY, JAMES E. STRICKLER and FRANK FROGGE, Appellants.—26 S. W. (2d) 785.

Division Two, April 7, 1930.

(1)

*K. D. Cross, M. E. Ford* and *Easton & McNeely* for appellants.

4

*John C. Landis, Jr.,* and *John C. Landis, III.,* for respondent.

6

HENWOOD, C.—The plaintiff school district filed this suit, in the Circuit Court of Buchanan County, against the defendant bank, as principal, and the defendants R. I. Bilby, James E. Strickler, Frank Frogge and nine other defendants, as sureties, on the bond of the bank, commonly known as a depositary's bond, in the sum of $100,000, alleging a breach of said bond and a loss of $45,030.84 of the plaintiff's funds as the result of the insolvency of the bank. The venue was changed to the Circuit Court of Clay County, where the case was tried before the court, a jury being waived. The trial court found the issues for the plaintiff and rendered judgment in favor of the plaintiff and against the defendants in the sum of $100,000, the full amount of said bond, to be satisfied in full upon payment of $42,727.50. The defendants R. I. Bilby, James E. Strickler and Frank Frogge appealed.

The plaintiff alleges in its petition that, on August 10, 1925, the defendant bank was duly selected as the depositary of one-eighth of its funds for a term of approximately two years next ensuing; that the funds so deposited were subject to the checks and drafts of the plaintiff, and the bank agreed to faithfully account for said funds and interest thereon; that, before said funds were deposited in the bank, the other defendants executed a bond in the sum of $100,000, as sureties, whereby it was agreed that, if the bank faithfully performed its obligations as provided therein, said bond should be void; otherwise, to remain in full force and effect; that, on the —— day of May, 1926, the bank became insolvent, and its doors were closed, and its business affairs placed in the hands of the State Finance Commissioner; that, at said time, it had on deposit in the bank, and subject to its checks and drafts, the sum of $45,030.84, and, although demand therefor has been made, the bank and the State Finance Commissioner have failed and refused to pay or to return to the plaintiff said sum of money or any part thereof.

The defendants, now appellants, admit in their separate answers that, on May 12, 1926, the bank became insolvent, and its doors were closed, and its business affairs were placed in the hands of the State Finance Commissioner, but deny all allegations of the petition not specifically admitted; and, further answering, state that at the time this suit was filed, the business affairs of the bank were in the hands of the State Finance Commissioner, and the plaintiff's claim for its funds duly allowed and ten per cent thereof paid, and the plaintiff will continue to share in the distribution of the bank's assets, and, therefore, this suit was prematurely brought; and further that the plaintiff's funds were deposited in the bank, by some arrangement unknown to these defendants, before they

executed the bond as sureties, and their execution of the bond was without consideration to them; and further that the bond is illegal, because the plaintiff's funds were not deposited pursuant to a written contract, and because the bond was not given for a consideration to be wholly performed subsequently to the execution thereof; and further that they are not liable as sureties on the bond, because the plaintiff's funds were not deposited in conformity with the terms of the bank's bid therefor, nor the terms of the bond, and because the plaintiff's funds were deposited under such conditions as to make the plaintiff a preferred creditor of the bank and the plaintiff failed to file its claim as a preferred creditor within the time allowed by law.

The plaintiff denies the affirmative allegations of these answers in its separate replies thereto; and, further replying, states that the funds deposited prior to the approval of the bond involved in this suit, on January 18, 1926, were secured by another bond, previously given by the bank; and further that the delay in the execution of the bond in suit was permitted at the request of the defendants and for their benefit and for the purpose of avoiding a forfeiture of the bank's guaranty check for $2,500, attached to its bid; and further that these defendants knew, when they signed the bond, that the time for its execution and delivery had been extended to enable the bank to procure acceptable sureties, and, by reason of such knowledge, are estopped from denying the validity of the bond, or consideration therefor; and further that these defendants knew that the plaintiff, in depositing its funds in the bank subsequently to the execution of the bond, relied upon the validity of the bond, and are thereby estopped from denying liability.

The bond in suit consists of two papers (Plaintiff's Exhibits 7 and 8), one executed on October 28, 1925, and the other on January 14, 1926. Omitting the statements and affidavits of the sureties on the first paper mentioned, these two exhibits read as follows:

"PLAINTIFF'S EXHIBIT 7.

"BOND OF DEPOSITARY.

"Know All Men by These Presents, That The Security Bank, a banking corporation duly organized and doing business in the city of St. Joseph, Buchanan County, Missouri, under and by virtue of the laws of the State of Missouri, as principal, and W. E. Reed, Veach Wilson, C. V. Davis, W. M. Whitaker, E. D. Holme, *Frank Frogge,* Elmer H. Franks, James N. Varvil, Geo. S. Luzzader and W. R. Frogge, as sureties, acknowledge ourselves to owe and be indebted to the School District of St. Joseph, in the County of Buchanan and State of Missouri, in the penal sum of One Hun-

dred Thousand Dollars ($100,000.00), lawful money of the United States of America, for the payment of which we bind ourselves, our respective successors, heirs, executors and administrators on the following conditions, to-wit:

"Whereas, said The Security Bank on the 10th day of August, 1925 was selected by the Board of Directors of said School District as depositary of one-eighth (1/8) of all the moneys and funds of said School District for a term of approximately two (2) years next ensuing said selection, said bank having made a separate bid for one-eighth part of said funds and having been awarded said fractional part as provided by Article 15 of Chapter 102 of the Revised Statutes of the State of Missouri for, the year 1919; in consideration of which said appointment, said bank agrees to pay said School District the sum of two and one-sixteenth per cent per annum, to be computed upon the daily balances of said School District with said depositary on the first day of each month:

"Now, therefore, If said The Security Bank shall faithfully perform the duties and obligations devolving by law upon it as such depositary, and pay, upon presentation, all checks drawn upon it by the treasurer of said School District whenever any funds or moneys of said School District shall be in said depositary, and shall faithfully keep and account for all funds and moneys of said School District according to law, then this bond shall be void, otherwise to remain in full force.

"In witness, wherefor, The Security Bank has caused these presents to be signed by its president with its corporate seal hereto attached, and attested by its secretary, they being authorized thereto by the Board of Directors of said bank, and said sureties have hereunto subscribed their names and affixed their seals this 28th day of October, 1925.

| | |
|---|---|
| "THE SECURITY BANK, | E. D. HOLME, |
| By W. E. REED, President. | *Frank Frogge,* |
| W. E. REED, | ELMER H. FRANKS, |
| VEACH WILSON, | JAMES N. VARVIL, |
| C. V. DAVIS, | GEO. S. LUZZADDER, |
| W. M. WHITAKER, | W. R. FROGGE, |
| | Sureties. |

"Attest:
     "P. B. HOLME, (Seal)
          "Secretary."   (Our italics.)

"PLAINTIFF'S EXHIBIT 8.

"BOND OF DEPOSITARY.

"Know All Men by These Presents, That The Security Bank, a banking corporation duly organized and doing business in the city

of St. Joseph, Buchanan County, Missouri, under and by virtue of the laws of the State of Missouri, as principal, and W. A. Boyer, *R. I. Bilby* and *James E. Strickler* as surety, acknowledge ourselves to owe and be indebted to the School District of St. Joseph, in the County of Buchanan and State of Missouri, in the penal sum of One Hundred Thousand Dollars ($100,000.00) lawful money of the United States of America, for the payment of which we bind ourselves, our respective successors, heirs, executors and administrators on the following conditions, to-wit:

"Whereas, Said The Security Bank on the 10th day of August, 1925, was selected by the Board of Directors of said School District as depositary (of) one-eighth (1/8) of all the moneys and funds of said School District for a term of approximately two (2) years next ensuing said selection, said bank having made a separate bid for one-eighth part of said funds and having been awarded said fractional part as provided by Article 15 of Chapter 102 of the Revised Statutes of the State of Missouri for the year 1919; in consideration of which said appointment, said bank agrees to pay said School District the sum of two and one-sixteenth per cent per annum, to be computed upon the daily balances of said School District with said depositary on the first day of each month.

"Now, therefore, if said The Security Bank shall faithfully perform the duties and obligations devolving by law upon it as such depositary, and pay, upon presentation, all checks drawn upon it by the Treasurer of said School District whenever any funds or moneys of said School District shall be in said depositary, and shall faithfully keep and account for all funds and moneys of said School District according to law, then this bond shall be void, otherwise to remain in full force.

"*This bond is supplemental to and coincident with a similar bond to the School District of St. Joseph, executed by The Security Bank as principal and other sureties on October 28, 1925.*

"In Witness whereof, The Security Bank has caused these presents to be signed by its President with its corporate seal hereto attached, and attested by its Secretary, they being authorized thereto by the Board of Directors of said bank, and said sureties have hereunto subscribed their names and affixed their seals this 14th day of January, 1926.

"THE SECURITY BANK,
"By W. E. REED, President (Seal)
"W. A. BOYER,
"*R. I. Bilby,*
"*James E. Strickler.*

"Approved as to form:
"JOHN C. LANDIS, JR." (Our italics.)

The appellate issues are issues of law only, there being no dispute as to the facts. The plaintiff's case rests largely upon documentary evidence offered in connection with the testimony of the secretary, treasurer and one of the attorneys of the school board. The defendants offered no evidence.

The plaintiff's evidence is summarized in appellants' brief in the following form:

"The biennial letting of the school money of the School District of St. Joseph, under Section 11446, Revised Statutes 1919, must be made on the second Monday in July of each odd-numbered year. Notice that bids will be received is required to be published by the secretary of the board at least twenty days before that date. The notice was given for the year 1925, calling for bids on the proper day, and on July 13th the board met and rejected all bids. The secretary was instructed to issue a new call for August 10, 1925. This was done and on the date mentioned the Security Bank came in with a bid of two and one-sixteenth per cent on daily balances for one-eighth part of the funds, accompanying the bid with a check for $2500, as required by Section 11447. This bid was accepted. The bids of four other banks, each for one-eighth part, were also accepted. All other bids were rejected, and the secretary was instructed to call for bids for the remaining three-eighths on September 14, 1925. At this subsequent letting the First Trust Company became the bidder for the remaining three-eighths.

"The Security Bank was notified that its bid had been accepted by letter dated August 17, 1925 (Plaintiff's Exhibit 6). This letter also contained the following:

" 'You are further notified that you will be required within ten days after the date of this notice to execute a bond to the School District in the penal sum of $100,000, to cover a period of approximately two years; or, deposit with a designated trustee bonds of the United States or of the State of Missouri, or County or of any city or School District in this State, whose par value shall not be less than said penal sum.'

"On January 18, 1926, the School Board made the following entry in its minutes:

" 'The bond of the Security Bank for $100,000, as depositary of one-eighth part of the funds of the district was approved by unanimous vote.'

(On January 20, 1926, the School Board returned to The Security Bank the guaranty check for $2500 which was attached to its bid.)

"Mr. Loving, the Secretary of the Board, testified that the matter of a bond was in progress for quite a long time but they (the Security Bank) had been unable to furnish a satisfactory bond. He also said the board had two papers before it when the minute was made, and identified Exhibits 7 and 8 as the papers, and that the

board had no other papers before it purporting to be a bond or bonds. Plaintiff offered the two exhibits, and appellants objected to them, because they did not conform to the pleadings, the petition charging a single obligation, whereas, the two papers purported to be two separate obligations. The court overruled the objection and appellants excepted. The further objection was made that Exhibit 7 was executed October 28, 1925, and Exhibit 8, January 14, 1926. This objection was overruled and appellants excepted. Exhibit 7 is signed by the Security Bank as principal and by ten individuals as sureties. Appellant Frogge appears on this bond. Exhibit 8 is signed by the Security Bank as principal and by appellants R. I. Bilby and James E. Strickler as sureties.

"We have seen that the bid of the Security Bank was received August 10, 1925, and notice of its acceptance was dated August 17, 1925. Mr. Loving, the secretary, was asked on cross-examination: 'Q. Have you examined the minutes from the 10th day of August, 1925, to the 18th day of January, 1926? A. Yes, sir. Q. To ascertain whether or not any bond offered by the Security Bank was acted upon by the board? A. Yes, sir. There is no record of action. Q. The first minute that you have upon the bond offered by the Security Bank is upon the 18th day of January, 1926? A. Yes, sir, that is, of recorded action.' The witness further said that Exhibit 7 (the bond dated October 28, 1925) was submitted to the attorney for the board and informally discussed, and the attorney discussed it with the board and the board declined to take any action.

"At the biennial letting in 1923, the Security Bank bid, and the School Board accepted its bid, for three-eighths of the funds, and it gave a bond on which the Integrity Mutual Casualty Company of Chicago was the surety. On the 14th day of January, 1926, the surety on said bond caused the notice (Exhibit 11) to be served on the School Board, and apparently on the Security Bank also, notifying both parties that it could not be held for moneys deposited under the new letting.

"Mr. J. D. C. Randall was treasurer of the School Board during a two-year period from July, 1924, to July, 1926. In his testimony, he gave the deposits in the several depositaries on various dates. On July 10, 1925, the Security Bank had $66,000, which was three-eighths of the whole fund. On August 1st, the figure was the same as July 1st (or 10th), $66,000. On August 4th, he made a deposit of $292,708, and made distribution on the 6th, and $84,000 of this went to the Security Bank, making a total in that bank of $150,000 on that date. He had the same amount in the Security Bank on September 1, 1925. On that date his depositaries were Empire Trust Co., Security Bank, Buchanan County Trust Co., Mechanics State Bank, and Drovers and Merchants Bank. On September 2nd, he

withdrew from the Security Bank $9,000 and $47,000. The $47,000 was deposited in the Missouri Valley Trust Company, and this bank was a new depositary of one-eighth under the letting of August 10th. He transferred the money when he was notified that the bond of the Missouri Valley Trust Company had been accepted. The balance in the Security Bank on October 1, 1925, was $84,000. On November 1, 1925 the balance in the Security Bank was $30,000. On November 30, the balance in the Security Bank was $33,000. The First Trust Company had qualified for three-eighths and had been made the clearing bank. On January 1, 1926, the balance in the Security Bank was $24,000. On January 15, 1926, the balance was $21,000. On January 18th, the balance was $99,000. On January 31, or February 1, the balance in the Security Bank was $94,000.

"This is as far as the analysis of the figures need go for the purposes of this case. The direct examination of the witness continued to where he said the balance in the Security Bank on May 12, 1926, the day it closed, was $45,000.

"On cross-examination, the witness said that he carried three-eighths of the funds in the Security Bank on September 1, 1925. On October 1st, he carried two-eighths. When asked why he dropped the Security Bank from three-eighths to two-eighths, he said he adjusted the funds according to instructions he had from the secretary's office as to the amount they were entitled to. During the month of October, a further adjustment was made. On the first of October, the Security Bank had $94,000. On the 12th, a withdrawal of $44,000 was made, which left $50,000. On that date, he withdrew $44,000 from the Buchanan County Trust Company, $44,000 from the Security Bank, and $47,000 from the Mechanics State Bank. The first deposit in the First Trust Company was made on that date. When that deposit was made, it left $50,000 in each of the five one-eighth banks, and $150,000 in the First Trust Company. The witness was then asked:

" 'Q. So far as your record shows, and so far as any figures you have given in are concerned, you equalized the Security Bank with the other one-eighth banks regularly from the 12th day of October to the time the Security Bank closed? A. I did. Q. And they each carried the same money, whether it was one-eighth or not, according to what was in the clearing bank. A. Yes, sir. Q. They each carried the same amount from then on, is that right? A. Yes, sir.'

"The witness then identified the pages of his record confirming the figures given, and they were offered and received in evidence as Exhibits 12 and 13.

"During all this period of time the Security Bank paid interest on the funds on deposit with it.

"The Mechanics State Bank was a depositary for the biennial period from 1923 to 1925. It did not bid for the 1925-1927 period. It paid interest on its July (1925) balance, and declined to pay interest thereafter. It kept the money without interest until October 12, 1925, when the money held by it was all drawn out and equalized as we have seen.

"After the Security Bank closed, a general claim was made out and filed with the Finance Commissioner, and a dividend of $4500 was paid prior to the trial of the case."

Other pertinent facts developed by plaintiff will be noted in the discussion of the questions presented for our determination.

I. Appellants complain of the admission in evidence of Plaintiff's Exhibits 7 and 8 in the following manner: "The two bonds, Exhibits 7 and 8, are not admissible in evidence  under the pleadings. The petition counts upon a bond. The court received in evidence two bonds forming two separate causes of action."

True, "the petition counts upon a bond" executed by appellants and others as sureties, but the petition refers to Exhibits 7 and 8, attached thereto, as constituting the bond sued on, and predicates a recovery upon an alleged breach of the "agreements set out" in said exhibits. Moreover, Exhibit 8 contains a recital which indicates that it was executed as a part of Exhibit 7, and the two exhibits were offered in evidence in connection with other evidence tending to show that they were executed and submitted to the school board as one bond and accepted and approved by the school board as one bond. So, under plaintiff's theory, Exhibits 7 and 8 were clearly admissible. And the record shows that appellants adopted plaintiff's theory, and waived the question of misjoinder of separate causes of action, by answering on the merits after their special demurrers to the petition on the ground of misjoinder were overruled. [Hendricks v. Calloway, 211 Mo. 536, 111 S. W. 60.]

However, in view of some of the other questions to be considered, it may be well to discuss the question of whether Plaintiff's Exhibits 7 and 8 constitute one bond or two bonds. It appears from the testimony of the secretary of the school board that, after the bank was notified of the acceptance of its bid, on August 17, 1925, "the matter of a bond was in progress for quite a long time but they (the officers of the bank) had been unable to furnish a bond satisfactory;" that the bond (Plaintiff's Exhibit 7) executed October 28, 1925, by the bank and ten sureties, including appellant Frank Frogge, "was submitted to the attorney (for the school board) and informally discussed as to the desirability of accepting it as a bond, but no action of any positive character was taken;" and that this bond (Plaintiff's Exhibit 7) "is a part of the bond which was eventually

14

finished up and approved" by the school board on January 18, 1926, as shown by the minutes of the board (Plaintiff's Exhibit 9). And it will be noted that the so-called bond (Plaintiff's Exhibit 8) executed January 14, 1926, by the bank and three sureties, including appellants R. I. Bilby and James E. Strickler, contains the following recital: "This bond is supplemental to and coincident with a similar bond to the School District of St. Joseph, executed by The Security Bank as principal and other sureties on October 28, 1925." It seems perfectly clear from this recital, taken as a whole, that the parties to this instrument (Plaintiff's Exhibit 8) understood that it was executed, and that it was to be submitted to the school board, as a part of the bond (Plaintiff's Exhibit 7) executed October 28, 1925. Indeed, appellants say in their brief: "This provision was inserted into this bond apparently with the idea of making it a part of the previous bond." We are likewise impressed, and, for the reasons above indicated, we conclude, as obviously the trial court did, that these two instruments constitute one bond, and that they were executed and submitted to the school board as one bond and accepted and approved by the school board as one bond.

II. Appellants contend that "the transaction between the bank and the school board had been completed" before the bond was executed, and that therefore "there was no consideration for the bond."

Manifestly, this contention is based upon a misconception of the contract between the bank and the school board. The evidence does show that the plaintiff completed the distribution of its funds, in accordance with the 1925 bids of its several depositaries, on October 12, 1925, including the deposit of one-eighth of its funds with the defendant bank; that the bond sued on was not executed by the appellant Frogge until October 28, 1925; and that it was not executed by the appellants Bilby and Strickler until January 14, 1926. But, the bond being one of the requirements of the contract, no new consideration was necessary at the time the bond was executed. The deposit with the defendant bank was made with the understanding and upon the promise that the bank would give a satisfactory bond, and the bank was afforded a liberal extension of time for that purpose by the grace of the school board and not by virtue of any right of the bank under the contract. The right of the bank to receive the benefits of the contract, as a depositary of one-eighth of the plaintiff's funds, was not perfected until the bond was given, and, although the plaintiff had partly performed its obligation under the contract before the bond was executed and delivered, it was only upon the execution and delivery of the bond that the contract became complete and binding upon the plaintiff. Hence the mutual obligations imposed upon the plaintiff and the bank,

under the contract, furnished a consideration for the bond, and this consideration was sufficient to bind appellants as sureties on the bond. [13 C. J. 362, secs. 225, 226, 227; Smith v. Molleson, 148 N. Y. 241; Comstock v. Gage, 91 Ill. 328; Robertson v. Findley, 31 Mo. 384; Oberbeck v. Mayer, 59 Mo. App. 289; Fullerton Lumber Co. v. Calhoun, 89 Mo. App. 209.] See, also, 13 C. J. 325, sec. 164; Green v. Higham, 161 Mo. 333, 61 S. W. 798; Strode v. St. Louis Transit Co., 197 Mo. 616, 95 S. W. 851. Under the contract, the plaintiff was bound to keep one-eighth of its funds on deposit with the defendant bank until July, 1927, at least, and the evidence shows that this was done, and that the bank actually received the benefits of the contract, until May 12, 1926, when it became insolvent and was closed by the State Finance Commissioner. Thus we see that appellants are clearly wrong in contending that "the transaction between the bank and the school board had been completed" before the bond was executed, and that "there was no consideration for the bond."

III. Appellants also contend that the bond is not a valid and binding obligation because, "in requiring and accepting the bond," the plaintiff violated Section 2164, Revised Statutes 1919, which provides that: "No school district . . . shall make any contract, . . . unless such contract be made upon a consideration wholly to be performed or executed subsequent to the making of the contract." In other words, it is said that the bond is invalid because it was executed and accepted after plaintiff's funds had been deposited with the bank, and, therefore, after a part of the consideration for the bond had passed.

In making this contention, appellants apparently misconceive the meaning of the statute above quoted. The bond was made, not by the plaintiff, but by the bank in pursuance of its contract with the plaintiff. The *contract* between the plaintiff and the bank was made on August 10, 1925, upon the acceptance of the bank's 1925 bid by the school board. The deposit with the bank was made on October 12, 1925. The bond was executed, in part, on October 28, 1925, and, in part, on January 14, 1926, and accepted and approved on January 18, 1926. That the *contract* was "made upon a consideration wholly to be performed or executed subsequent to the making" thereof is not disputed. It follows that the school board did not violate Section 2164 in making the *contract*, nor "in requiring and accepting the bond" given in pursuance thereof.

16

IV. Appellants further contend that the bond is invalid because it was not executed within the time prescribed by Section 11449, Revised Statutes 1919, and because, for that reason, the selection of the defendant bank as a depositary was in violation of Section 11450, Revised Statutes 1919.

Sec. 11449 says: "Within ten days after notice to any bidder of the selection of such bidder as one of the depositories, it shall be the duty of such bidder, so selected and notified, to execute a bond, payable to said school district, in a penal sum equal to not less than the largest amount of the funds and moneys of the school district which will probably at any time within the ensuing two years be in such depository," etc.

Sec. 11450 says: "If any banking corporation . . . after having been selected as such depository, and notified thereof as aforesaid, shall fail to give such bond within the time provided by the next preceding section, the certified check or checks, accompanying the accepted bid or bids of such banking corporation . . . shall be forfeited to the school district as liquidated damages, and the board shall, after twenty days' notice, in the manner hereinafter provided, proceed to receive new bids and select another depository in lieu of the one failing to give such bond."

As the bid of the defendant bank was accepted on August 10, 1925, and the bank was notified on August 17, 1925, to execute a bond to the plaintiff within ten days thereafter, and the bond was not executed until January 14, 1926, it must be conceded that the bond was not given within the time prescribed by Section 11449, and that the selection of the defendant bank as a depositary was not in strict conformity with the provisions of Section 11450. In this connection, however, the evidence shows that, on account of the rejection of unsatisfactory bids, all of the depositaries of plaintiff's funds under the 1925 letting were not selected until September 14, 1925; that the readjustment of plaintiff's deposits in accordance with the 1925 bids was not completed until October 12, 1925; that plaintiff's funds on deposit with the defendant bank were secured by another bond until October 12, 1925, at least; and that "the matter of a [new] bond was in progress for quite a long time but they [the officers of the bank] had been unable to furnish a bond satisfactory." As we have hereinabove indicated, it may be fairly inferred from these facts that the deposit with the defendant bank of one-eighth of plaintiff's funds on October 12, 1925, was made upon the promise that the bank would give a satisfactory bond, and that the bond in suit was given in pursuance of such promise and in the performance of the bank's obligation under its contract with the plaintiff.

Whether the Legislature intended to invalidate a bond given under such circumstances, that is, whether the statutory provisions referred to are mandatory or merely directory, we need not decide. Where, as here, faith and credit have been given to a depositary bond and it has performed the function of a statutory bond, the sureties on such bond cannot escape liability upon the ground that their principal was not duly selected as a depositary, nor upon the ground that such bond was not executed and delivered within the time prescribed by the statute. The evidence in this case shows, and the bond in suit recites, and appellants do not deny, that the defendant bank was selected as a depositary of one-eighth of plaintiff's funds. The evidence further shows, and appellants do not deny, that, upon the execution, acceptance and approval of the bond, the bank became such a depositary, "assumed and acted that role," received one-eighth of plaintiff's funds as such a depositary, and thereby, to all intents and purposes, became such a depositary *de facto*. By signing and delivering the bond, the sureties, including appellants, intended that the bank should become such a depositary. That act enabled the bank to get hold of one-eighth of plaintiff's funds. Under such circumstances, it becomes immaterial whether the bank was selected as such a depositary exactly as prescribed by the statute, or whether the bond was executed within the time prescribed by the statute. The engagement of the sureties on the bond in suit was to stand sponsor for the bank—to answer for its default. That default could arise whether the bank was a depositary *de facto* or *de jure*. That default has arisen, and appellants, as sureties on the bond, must answer therefor. [See Henry County v. Salmon (Court en Banc), 201 Mo. 1. c. 153, 100 S. W. 1. c. 23, and authorities cited.] In Henry County v. Salmon et al., supra, the following is quoted with approval from the case of Board of Commissioners of Hennepin County v. State Bank, 64 Minn. 180: "In principle, this case falls within the rule that the sureties upon an official bond, by virtue of which the officer has been inducted into office, cannot, when called upon to answer for his official defaults, escape liability upon the ground that their principal was not duly elected or appointed, or did not legally qualify." [See also Lionberger v. Krieger, 88 Mo. 160, and cases cited.]

V. Appellants finally contend that the rule of *strictissimi juris* must be applied in this case, but they do not even attempt to point out wherein the rule is applicable. They merely quote the rule, as applied to sureties, in the following form: "Sureties are said to be favorites of the law, and a contract of suretyship must be strictly construed to impose upon the surety only those burdens clearly within its terms,

18

and must not be extended by implication or presumption.'' [32 Cyc. 73.]

We quite agree that this rule is well established in this State. It will suffice to say, however, that it has no application in this case. We are not confronted here with any issue involving the construction of the bond in suit, or the intention of the parties as therein expressed, and our disposition of the case does not depend upon any implications or presumptions relating to the obligation assumed by the sureties.

Taking the case as a whole, it will be observed that appellants do not deny the execution of the bond, nor the default of the bank under the terms thereof; nor do they dispute the amount of plaintiff's loss as fixed by the judgment rendered below. On the issues of law presented, we are in full accord with the conclusions reached by the learned trial judge. The judgment is accordingly affirmed. *Davis* and *Cooley, CC.,* concur.

PER CURIAM:—The foregoing opinion by HENWOOD, C., is adopted as the opinion of the court. All of the judges concur, except *Walker, J.,* absent.