BOONE COUNTY, MISSOURI, Appellant, v. S. L. CANTLEY, Commissioner of Finance of Missouri, IN CHARGE OF BANK OF CENTRALIA.— 51 S. W. (2d) 56.

Division One, June 13, 1932.

*Harris, Price & Alexander* for appellant.

*North T. Gentry* for respondent.

914

RAGLAND, J.—The Bank of Centralia, which had theretofore been designated a county depositary by the County Court of Boone County, closed its doors on March 22, 1930, and was taken in charge by the State Commissioner of Finance for liquidation. On that date Boone County had on deposit to its credit with the bank a balance of $16,000. The county, following the procedure prescribed by the statute, sought to have its claim therefor given priority of payment out of the assets of the Bank. It was denied a preference by the circuit court, and this appeal followed.

As it is one of appellant's contentions that the Bank of Centralia at the time of the deposit of county funds with it had not been lawfully created a county depositary, we will briefly outline the proceedings whereby it was selected and designated as such.

On April 19, 1929, the county court by order entered of record directed the county clerk to publish notice that at its May Term, 1929, it would receive proposals from banks and banking corporations, or individual bankers, in said county "for the deposit of the county and capital school funds of said county for the two years next ensuing the date of said bids."

According to the records of the county court, the court on May 6, 1929, a day of the May Term of that year, opened the bids which had been received and filed by the county clerk. There were ten of them. Each of nine of them, including the Bank of Centralia, recited that it was made pursuant to the notice which had been published, and each was a bid for one-tenth or more of the funds to be let. The tenth bank's bid, which according to evidence *dehors* the record was not received until May 7th, was for "the same proportion of the county funds as we have handled for the past two years." Each of the ten bidders offered to pay three per cent on daily balances.

On the same day on which the bids were opened, the county court, as its records recite, "selected each of the following banks (naming each of the ten who had submitted bids, including the Bank of Centralia) as a depositary for the county fund, district school funds and capital funds not otherwise invested according to law . . . at their bids of three per cent, respectively, selecting the Boone County Trust Company to act as clearance house for the banks."

The county court's record of May 29, 1929, discloses the further action of the court as follows:

"Now on this day the court finds that the ten banks heretofore, on May 6, 1929, selected as depositaries of the county funds have filed their bonds in the sum of $40,000 each; which bonds are now examined and approved by the court, and the court doth now designate each of said banks (again naming them, including the

Bank of Centralia) a depositary for the county and capital school funds of the county until sixty-five days after the first day of the May Term of 1931, of this court. The court further orders that the Boone County Trust Company be and the same is hereby selected as clearing house for the others . . ."

The county court made no order as to the amount or proportion of the funds which should be deposited with each of the designated depositaries, but the county treasurer distributed the funds equally among them, except that she allotted to the one selected as the clearing house a somewhat larger portion than to the others.

The bond executed by the bank to secure the faithful performance of its obligation as a county depositary contained, among others, the following recital:

"Whereas, the bid offered by the said Bank of Centralia . . . to the County Court of said County on the———day of May, 1929, to become depositary of one-tenth (1-10) *per cent* of the funds of said county was accepted by said Court, etc."

The bond was in conventional form and, aside from the misrecital just noted, was regular in all respects, embodying in terms the obligations prescribed by the statute.

The bond was signed by R. P. Price, E. A. Early, R. L. Hope, J. R. Brown, C. H. Early and W. I. Keene, as sureties. Appellant's challenge of the solvency of some of them at the time the bond was executed requires a brief summary of the facts which the evidence offered touching that matter tends to show.

All six of the sureties were directors of the Bank. Previous to the execution of the bond in question, they, with one Starr, had formed a pool to buy stock in the Bank which had been owned by a stockholder then deceased. In the purchase of the stock they executed a note, or notes, for $42,000,—outstanding and unpaid when they executed the depositary bond. No question is raised as to the solvency of either Brown or Keene at the time of the execution of the bond. Both were farmers and stockmen of large means and both owned unencumbered real estate in Boone or in Boone and Audrain Counties. Such real estate holdings of the former were valued at $50,000 and that of the latter at $100,000. If the stock they had in the bank be counted a part of their assets and their several liability on the $42,000 indebtedness be limited to one-seventh thereof, Price, E. A. Early, Hope and C. H. Early were solvent. On the basis just noted Price's net worth was approximately $25,000; E. A. Early's $10,000; Hope's $15,000; and C. H. Early's, $25,000. If the bank stock which they owned be withdrawn from consideration in determining their solvency for the purpose of qualifying as sureties on the depositary bond, and/or if each be charged as of the

date of the bond with liability for the entire indebtedness of $42,000 none of the four last mentioned sureties was solvent at the time the bond as accepted by the county court. Starr who was one of the makers of the $42,000 note was solvent, a man of considerable wealth.

The foregoing sufficiently outlines the facts.

Appellant advances two propositions. If either be sound, it is entitled to the preference which it claims. It states them as follows: (1) "The tax moneys of the County as a political subdivision of the State when deposited in a bank give rise to a preferred claim in favor of the public entitling to priority of payment over other creditors of the bank;" and (2) "The provisions of the depository law were not complied with in the selection of defendant bank; therefore the bank received the funds sued for unlawfully and became trustee *ex maleficio* and the claim is preferred."

■ I. By statute (Sec. 3152, R. S. 1929), and at common law, the State is entitled to priority of payment out of the assets of an insolvent debtor. [In re Holland Banking Co., 313 Mo. 307, 281 S. W. 702.] But the statute is without application where the debt is owing by the insolvent debtor to a county or township. [State v. Ruby, 77 Mo. 610.] And, according to the great weight of authority. the common law prerogative right of the State is not available to its political subdivisions. [51 A. L. R. 1339.] "In the absence of a statute or of special facts creating a trust, a claim for public funds deposited is not preferred." [22 R. C. L. 230; Compton Company v. Trust Company, 220 Mo. App. 1081, 1087, 279 S. W. 746.] On its first ground appellant is not entitled to a preference.

II. The steps taken by the county court leading up to and including its designation of the Bank as a county depositary were not in many respects a literal compliance with the procedure charted by Article IX, Chapter 85, Revised Statutes 1929, as a casual reading of the statute will disclose. But if such non-compliance has in the slightest degree prejudicially affected any public or private right involved in this case, we are unable to discern the respect in which it has done so. [See In re North Missouri Trust Company, 39 S. W. (2d) 415.]

■ We except from the statement last above the approval and acceptance by the county court of the bond tendered by the Bank as a county depositary. Such a bond must comply, and we think literally, with the requirements of the statute. Under the statute the county itself, and not the county treasurer, is the depositor. [Sec. 12188, R. S. 1929.] A county is authorized to deposit its funds in county depositaries only. A bank which has given a bond that does

not comply with the provisions of Section 12187, Revised Statutes 1929, regardless of the action taken by the county court with respect to it, is not a county depositary either in law or in fact. And upon the receipt of county funds by such a bank, under color of being a county depositary, a trust as to the funds so deposited arises in favor of the county. [Huntsville Trust Company v. Noel, 321 Mo. 749, 757, 12 S. W. (2d) 751.]

■ Said Section 12187 requires, among other things, that after the selection of a depositary by the county court the depositary shall execute a bond payable to the county "with not less than five solvent sureties, who shall own unencumbered real estate in this State of as great value as the amount of said bond.", [Certain other specified security may be accepted.] We construe the language just quoted to mean that each of five sureties must be solvent, and that the sureties collectively must own unencumbered real estate in this State of as great value as the amount of the bond. There is no question but that the sureties on the bond here involved fully met the requirement as to the ownership of unencumbered real estate, nor is there any question but that the bond afforded, and now affords, ample security for the repayment of the county funds deposited with the bank. Appellant's insistence is that the bond was not executed by "five solvent sureties." The questions involved in determining whether the sureties, other than Brown and Keene, were solvent have been forecast in the statement of facts.

The Legislature has prescribed no method for determining the solvency of persons who are offered as sureties on county depositary bonds. It has not said that their ownership of stock in the bank for which they are to become sureties must be excluded from consideration in determining their solvency. That is a matter, however, which the county court could, and should, consider. It is not our function to pass upon the sufficiency of the sureties on the bond in question, but to construe the statute. We do not feel authorized to write into it a limitation upon the general term "solvent" which the Legislature has used without restriction.

Each of the four sureties whose solvency at the time of the execution of the bond is challenged was solvent if his liability on the $42,000 note at that time be regarded as going only to his proportionate part of the obligation. There were seven makers of the note; all were solvent within the limitation just mentioned. So far as the holder of the note was concerned, each of the makers was liable to him for the entire indebtedness, but with respect to each other each was bound for only one-seventh thereof. All being solvent, why should one of them have been required to discharge the whole debt?

If that contingency had ever arisen, the one so paying would immediately have been invested with a right of contribution as against his co-makers, itself a property right. So that for the liability of each in excess of his proportionate share there was a corresponding asset in the right of contribution.

"Solvent" as applied to a bank, merchant or trader, means ability to pay one's debts in the usual and ordinary course of business. [Akin v. Hull, 222 Mo. App. 1022, 9 S. W. (2d) 688, and cases there cited.] But in its general application it means having property, whether real or personal, tangible or intangible, removable or non-removable, of sufficient value to discharge all of the owner's debts. [Cohen v. Parrish, 100 Ga. 335.] The term is used in the statute in its general sense. Within this unrestricted sense all of the sureties were solvent.

The bank having been duly designated a county depositary, and having qualified as such in conformity with the requirements of the statute, appellant's deposits with it were general deposits. Consequently, appellant's present status with reference to the bank is merely that of a general creditor.

The judgment of the circuit court is affirmed. All concur.