WILLIS H. MITCHELL, Treasurer of Douglas County and DOUGLAS COUNTY, a political subdivision of the State of Missouri, Appellants, v. THE BANK OF AVA, a Corporation in charge of S. L. CANTLEY, Commissioner of Finance of the State of Missouri.— 65 S. W. (2d) 99.

Division One, October 19, 1933.

*Tom R. Moore* and *Moore & Moore* for appellants.

962

*Farrington & Curtis* and *Paul W. Barrett* for respondents.

FERGUSON, C.—The Bank of Ava, in Douglas County, which on May 10, 1929, had been selected by the county court as depositary of one-third of all the funds of that county was closed on October 23, 1930, and its "affairs and assets" placed under the control of the Commissioner of Finance for liquidation. On that date Douglas County had on deposit with the bank, and to its credit, a balance of $15,278.45. Of this amount the county claimed a preference as to $3,941.54 and following the procedure prescribed by statute brought this proceeding in the name of Willis H. Mitchell, Treasurer of Douglas County and Douglas County seeking to have the claim for $3,941.54 given priority of payment out of the assets of the bank. The preference was denied by the circuit court and the county brings this appeal.

A statement of the uncontroverted facts upon which the county bases its claim to a preference together with citation of and reference to applicable statutes, follows.

Pursuant to the statutory requirements and formalities, Sections 12184-12186, Revised Statutes 1929, due compliance therewith having been made, the County Court of Douglas County at its regular May Term, 1929, and on the 10th day of May, by order of record, selected the Bank of Ava, Citizens Bank of Ava and Peoples Bank of Ava, each as depositary of one-third of the funds of Douglas County for the ensuing statutory term, said banks to pay the county interest at the rate of three and one-half per cent monthly on daily balances. Section 12187, Revised Statutes 1929, provides:

"Within ten days after the selection of depositaries, it shall be the duty of each successful bidder to execute a bond payable to the county, to be approved by the county court and filed in the office of the clerk thereof, with not less than five solvent sureties, who shall own unencumbered real estate in this State of as great value as the

amount of said bond, or with a surety or trust company authorized by the laws of this State to execute bonds as surety . . . and said bond shall be conditioned for the faithful performance of all the duties and obligations devolving by law upon said depositary and for the payment upon presentation of all checks drawn upon said depositary by the proper officers of said county or any township whenever any funds shall be in said depositary, and that all interest will be paid promptly, and that all said funds shall be faithfully kept and accounted for according to law.''

The statute, Section 12185, requires that the proposal or bid made by a bank to become depositary for county funds shall be accompanied by a certified check in a proportionate sum therein specified and then provides that, ''upon failure to give the bond required by law, the amount of said certified check shall go to the county as liquidated damages, and the court may order the county clerk to readvertise for bids.'' We find further reference to the certified check in Section 12186: ''The county clerk shall, in opening the bids, return the certified checks deposited with him to the banks whose bids were rejected, and on approval of the bonds of the successful bidder or bidders return the certified check or checks respectively to the bank or banks whose bid or bids are accepted.''. Neither of the three banks so selected as depositaries on May 10, 1929, filed its depositary bond within ten days thereafter as directed by Section 12187, nor for failure to do so did the county court, as authorized by Section 12185, declare the amount of the certified checks deposited forfeited to the county as liquidated damages and order a readvertisement for bids. The three depositary bonds were not filed until August 7, 1929, on which date each bank filed its bond. The bonds were on the same date examined, ''found to be in proper form and sufficient amounts,'' and approved by the county court, as appears by its order of record. It appears that the defendant, Bank of Ava, had been a legally designated and acting county depositary under a depositary contract for the statutory term next preceding May 10, 1929, and on that date was indebted to the county for a balance of county funds deposited during such preceding term, and then standing to the credit of the county, in the amount of $9,166.88. Following the action of the county court of May 10, in selecting the defendant, Bank of Ava, as a depositary of one-third of all county funds for the ensuing statutory term the county treasurer continued to make deposits of county funds with defendant bank, presumably one-third of all such funds, and the bank to pay the county interest on daily balances at the rate fixed by its bid or proposal of May 10th. From May 10th to the date of the filing and approval of the bond, August 7th, the treasurer deposited county funds with defendant bank in an aggregate amount of $3,941.54, for which the preference is asked. During the same period the county, by its treasurer, drew checks against its account in

this bank, which were paid, in the aggregate amount of $5,220.96. The county court has filed suit against the sureties on the bond asking judgment thereon for $15,278.45, the full amount of the balance to the credit of the county with the bank at the time the bank was closed, alleging that the sureties are liable under the obligation of the bond in such amount. That suit was filed after this claim for preference as to $3941.54 of such amount was filed. As we understand, no trial of that cause has been had and the same remains pending, as appellants state in their brief, subject to the disposition of this claim and another suit now pending in this court on appeal involving a right of set-off by the county as to a certain amount.

The county and county treasurer having been joined as claimants and plaintiffs are the appellants, but we shall hereinafter refer to the claim as made by the county since under the statute (Sec. 12188), the county itself and not the county treasurer is the depositor. [Boone County v. Cantley, 330 Mo. 911, 51 S. W. (2d) 56.]

The contention of the county is, that the deposits, aggregating $3,941.54, made in the period from May 10, 1929, to the date of the filing and approval of the depositary bond on August 7, the bank not having qualified as a depositary, were necessarily received by the bank with full knowledge that it had not complied with the essential statutory requirements to constitute it a legal depositary and such deposits were therefore impressed with a trust and received and held by the bank as trust funds entitling the county to a preference in the amount thereof; that upon the filing of the bond the status of legal depositary was established and thereafter existed; that the deposits thereafter made were legal deposits being received in the capacity of depositary and apparently that the bond only covered and secured such deposits as were made after its filing and approval. As to the doctrine or rule of appropriation of payments the county points out that on May 10, the balance on deposit in the account and to the credit of the county with defendant bank was $9,166.88; that thereafter and to August 7, county funds aggregating $3941.54 were deposited and during the same period withdrawals aggregating $5,220.96 were made and such withdrawals under the rule of appropriation of payments must be considered as being paid out of the balance of $9,166.88 shown to the credit of said account on May 10, and that the deposits made after that date and prior to August 7 were not therefore paid by such withdrawals.

Though according to the above amounts the balance to the credit of the county on August 7, 1929, when the bond was accepted and approved, at which time the county claims the bank qualified and thereafter had the status of a legal depositary, was $7887.46 and the balance to the credit of the county on October 23, 1930, when the bank closed was $15,278.45, yet of that final balance a preference is claimed only as to the sum of $3,941.54, the aggregate of the de-

posits made between May 10 and August 7, 1929. It is appellants' theory that these deposits were at the time they were made, and at all times since have been, impressed with a trust and that the bank should be deemed to have continued to hold them separately as trust funds. There was but one continuing account with the bank, which was offered in evidence, showing the state of the county's account from March 29, 1929, to October 20, 1930, which date marked the last entry prior to the closing of the bank.

The county does not in any manner challenge the sufficiency of the bond as a statutory depositary bond and inferentially concedes, as it must, that if the bond when accepted and approved by the county court operated to cover and secure all county funds then on deposit as well as those thereafter deposited the claim for a preference was properly denied. Such is, we think, the effect of the bond. On May 10, 1929, the county court, after due compliance with all preliminary statutory requirements had been made, accepted the proposal made by the bank to act as depositary for one-third of all county funds for the ensuing two years at a rate of interest therein specified and selected the bank as such depositary. Though the bank did not file the statutory depositary bond within the time specified by statute the county court did not revoke the selection, forfeit the amount of the certified check deposited with the bid and readvertise for bids as authorized by statute but when the statutory bond was filed, examined and approved same and thereby designated the bank as, and the bank became, a legal depositary. The bond though not filed within the time specified by statute was nevertheless, under the circumstances, a valid and legally enforceable security for the full amount of the balance due the county from the bank and to its credit with the bank at the time the bank closed. [School District of St. Joseph v. Security Bank of St. Joseph, 325 Mo. 1, 26 S. W. (2d) 785, 791.]

Under the facts it appears that deposits made during the period following the selection of the bank as depositary and prior to filing of the bond were received and held during such time as trust funds and had the bank been closed during that period the claim for a preference as to such deposits would have been well founded; this because the bank in receiving such deposits under color of being a county depositary when it had not as yet qualified as such wrongfully obtained possession of and held same, the deposits being illegally made and received. [Huntsville Trust Co. v. Noel, 321 Mo. 749, 12 S. W. (2d) 751; White v. Greenlee, 330 Mo. 135, 49 S. W. (2d) 132; Boone County v. Cantley, 330 Mo. 911, 51 S. W. (2d) 56; School District of Cameron v. Cameron Trust Co., 350 Mo. 1070, 51 S. W. (2d) 1025; Harrison Twp., Vernon County, v. Peoples State Bank of Bronaugh, 329 Mo. 968, 46 S. W. (2d) 165; Special Road District v. Cantley (Mo. App.), 8 S. W. (2d) 944.] But when the

bank qualified by filing a statutory bond which was accepted and approved by the county court it thereupon became a legal depositary legally possessed of all county funds then on deposit and held by it or which were thereafter deposited during the continuance of the term for which it had been selected as a depositary, and such of the county funds as had theretofore, by virtue of the conditions attending the deposit thereof, been received and were then being held as trust funds were thereby and thereupon transformed into legal and general deposits, the relation of trustee and *cestui que trust* was terminated and that of debtor and creditor arose so that, as to the balance to the credit of the county in the bank at the time it was closed, the county's status was, as the circuit court held, that of a general depositor and a common or general creditor. (See cases cited supra.)

 Though the argument we are now about to mention is not specifically made by appellants, nevertheless, since appellants' general theory seems to include as a premise the proposition that the aggregate of the deposits made between May 10 and August 7, $3941.54, being trust funds, continued as such after the filing and approval of the bond, should be considered as then set apart and thereafter held intact as trust funds and that the bond only operated to secure any funds deposited after its acceptance and approval on August 7, we think it perhaps advisable to here note certain language found in the bond which if isolated and taken separately and without regard to the context and other specific language and terms used in the instrument might be seized upon as indicating that it was intended that the bond should secure only funds deposited in the future. The bond reads:

"Bond for Douglas County Funds

"Know all Men By These Presents: That the Bank of Ava, as principal and J. A. G. Reynolds, Sallie J. Adams, Ellinor Kavnaugh, Florence K. Adams, J. E. Curry, L. H. Petit, W. F. Reynolds, as sureties are held and firmly bound unto the county of Douglas, State of Missouri, in the sum of Thirty Thousand Dollars ($30,000.00) of which we do bind (hereby) ourselves, our heirs, executors and administrators firmly by these presents. The conditions of the above bond are such that whereas the above bounden Bank of Ava, Douglas county, Missouri, was on the 10th day of May, 1929, designated by the county court of Douglas County, Missouri, depository of one third of all the funds of Douglas County, Missouri, said funds consisting of all State and County revenues of Douglas County, Missouri, also of all of the school funds of Douglas county, Missouri.

"Now therefore if the Bank of Ava, Douglas county, Missouri, shall faithfully and promptly perform all the duties of the said County Depository and if the said Bank of Ava, Douglas County, Missouri, shall pay according to law all moneys which shall come into its hands,

as such county depository and shall render a just and true account thereof to the Treasurer and the Board of County Judges, of Douglas County, Missouri, as provided by the Statutes, of the State of Missouri, and deliver on the 1st Monday in May, 1931, to its successor, County Treasurer or any other person authorized by law to receive the same, all moneys together with three and one fourth percentum (3 1-4) for the use of same, monthly according to daily balances, books, papers, and such other things, appertaining thereto, or belonging to said county of Douglas, then the above obligation to be void, otherwise to be in full force and effect.

"Witness our hands and seals this, the 6th day of August, 1929."

The language to which we refer is found in the conditions stated, i. e., "if the Bank of Ava . . . shall pay according to law all moneys which *shall come into its hands as such county depository.*" The conditions of such bond made by statute (Sec. 12187) are set out supra, and it will be noted that while all the conditions of the bond here are not in the exact language of the statute the bond does substantially comply with and conform to the statute. A bond taken under a statute is to be construed by it if the language of the bond will admit of such construction and as the obligors are presumed to have known the terms and conditions of the statute and to have bound themselves in reference thereto the bond and the statute must be read and construed together and the language of the bond interpreted in the light of the statute and with a view to effectuating the statutory design. Considering the statute under which this bond was given and the context and language of the bond as a whole we do not think that, as used therein, the language: "moneys which shall come into its hands as such county depositary," should be construed as restricting and confining the bond as security only for deposits thereafter made. It purports, and was intended by the obligors, to be a depositary bond securing the county in the deposit of one-third of the county funds in the bank and the payment by the bank of the agreed rate of interest thereon. The bond is expressly conditioned that the bank "shall faithfully and promptly perform all the duties" of a depositary of one-third of all county funds and one of the duties or obligations of a county depositary is to pay upon proper demand made by the county any and all sums of money to the credit of the county with such bank. The statute intends and the purpose of the bond is to serve as a protection and security for public funds and such is the tenor, purport and effect of this bond. The obligors are assumed to have known and undertaken the obligation imposed by the statute and they agreed to stand sponsor for the bank and answer for its default if it failed, during the term of the depositary contract, to pay the county upon proper demand therefor any money to its credit with the bank at the time such demand is made. Reading and construing the bond with the

statute we think it must be held to cover all funds to the credit of the county with the bank at the time it was accepted and approved as well as funds thereafter deposited. We may, however, isolate the language: "moneys which shall come into its hands as such county depository," and read it with grammatical preciseness yet there is an applicable principle which operates to refute any contention that might be made that such funds as were to the credit of the county with the bank at the time the bond was given and approved were not included within its protection, and that it afforded security only as to funds thereafter placed on deposit by the county treasurer. When the bank qualified as a legal depositary of one-third of all county funds by executing and filing the bond which was approved by the county court thereupon all county funds then to the credit of the county with the bank, though theretofore received and then held as trust funds, "were in effect deposited anew." [Huntsville Trust Co. v. Noel, supra.] Looking to the whole depositary scheme, the intent of the obligors on the bond in the light of the statute, the obligations thereby imposed and the purpose for which the bond was required and given the bond should be held to cover the money already on deposit at the time it became effective there being in legal effect a redeposit of such money at that time. [18 C. J. 587.] It would be a vain and useless gesture that, in order to bring the county money at that time on deposit under the protection of the bond, the county treasurer should, after the approval of the bond, be required to withdraw such money and the bank go through the form of actually paying same over to the county and the county treasurer then immediately redeposit it in the bank to the credit of the county. Under the facts here when the status of legal depositary became complete and fixed the law considers such redeposit as then made.

It becomes unnecessary for us to discuss one of the arguments advanced by respondent relating to the appropriation or application of payments by withdrawals made after August 7, 1929.

We think the trial court correctly ruled the claim for preference and its judgment must therefore be affirmed. It is so ordered. *Sturgis* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinion of the court. All the judges concur.