POLK COUNTY and EDGAR REDHAIR, Treasurer, v. FARMERS' STATE BANK OF BOLIVAR, in Liquidation, and S. L. CANTLEY, Commissioner of Finance, in Charge of Said Bank.—82 S. W. (2d) 577.

Division Two, May 7, 1935.

*T. H. Douglas* for appellants.

*Farrington & Curtis* and *Herman Pufahl* for respondent.

WESTHUES, C.—This is a proceeding to establish a claim in the sum of $38,796.24 as preferred, against the assets of the defunct Farmers' State Bank of Bolivar, which assets were in the hands of the State Finance Department for the purpose of liquidation. The trial court ordered a preference in the sum of $13,000, and the balance of the sum as a common claim. From this judgment an appeal was taken by appellants, defendants below.

The defendant bank closed its doors on May 4, 1931. On May 6, 1929, it was designated, by the County Court of Polk County, as a depositary for one-half of the county funds. The other half was awarded to the Farmers' Bank of Fair Play. The defendant bank filed a bond in the penal sum of $100,000. It was conceded at the trial that the defendant bank was legally designated as a depositary

for one-half of the county funds. The evidence disclosed that soon after the depositaries were designated, the county treasurer kept a much larger sum on deposit in the defendant bank than in the bank of Fair Play. In other words, the money was not divided equally between the two depositaries. This, we learn from the evidence, was largely due to the fact that the officers of the defendant bank persuaded the county authorities to keep a larger deposit with their bank because they needed the money in the banking business, that is, the bank was hard pressed for cash. This practice was followed until the day the defendant bank closed its doors. Respondents' additional abstract of the record discloses the average monthly balance that was kept on deposit in the two banks during the entire period. For the year 1931, it shows the following:

| "Bolivar Bank 1931 | | "Fair Play Bank 1931 | |
|---|---|---|---|
| "Jan. | $38,131.00 | "Jan. | $31,944.90 |
| Feb. | 40,124.92 | Feb. | 44,670.82 |
| Mar. | 40,132.44 | Mar. | 27,235.32 |
| Apr. | 39,356.61 | Apr. | 17,168.66 |
| May | 35,494.93 | May | 12,385.77" |

It will be noticed that February was the only month the bank of Fair Play had on deposit a sum equal to the sum on deposit in the defendant bank. In January, 1931, the county court instructed the treasurer not to keep over $40,000 on deposit in the defendant bank.

The theory upon which the trial court allowed a part of the claim as preferred, can be best ascertained by quoting a part of the court's judgment, which reads as follows:

" 'The Court further finds that on the fifth day of May, 1931, and for some time prior thereto there was on deposit in both of said banks in round numbers the sum of Fifty Thousand Dollars ($50,-000.00), and that the Bank at Fair Play had only about Eleven Thousand Dollars ($11,000.00) of said sum and had not had to exceed said sum for a long time.

" 'The Court therefore finds that the sum of Thirteen Thousand Dollars ($13,000.00) of the moneys of Polk County, and in the hands and custody of the Treasurer of Polk County, was wrongfully and unlawfully deposited in the Farmers' State Bank of Bolivar and that as to said sum of Thirteen Thousand Dollars ($13,000.00) Polk County is entitled to a preference of the funds in the said bank.' "

While the county treasurer, Mr. Redhair, was on the witness stand he was questioned by the court as follows:

"BY THE COURT: Q. My question was whether the money had been divided for some time in substantially the same proportion, something over $38,000.00 in the bank here at Bolivar, and about $11,000.00 in the bank at Fair Play?

"A. Well, you see we were checking on the Fair Play bank all the time and drawing out of that bank, and it was getting lower all the time, while we were not taking any from this one."

The evidence disclosed that the county authorities refrained from checking against the fund in the defendant bank at the instance and request of the bank officials. The officers informed the county court and treasurer that if the county drew checks against this fund the bank would have to close.

█ The deposit in the defendant bank did not at any time exceed the amount authorized by the bond. The relation of debtor and creditor was, therefore, created between the defendant bank and the county. The amount on deposit in the Fair Play Bank was reduced from month to month because the county checked against the funds deposited in that bank and not against the funds in the defendant bank. Such action on the part of the county authorities could not, under any theory of the law, change the relation of debtor and creditor, between the defendant bank and the county, to that of a trustee *ex maleficio* and *cestui que trust*. Respondents cite the case of William R. Compton Co. v. Farmers' Trust Co. of Grant City, 279 S. W. 746. In that case the board of supervisors of the drainage district had, by virtue of their statutory authority, made an order upon their treasurer to deposit funds in his hands as follows: $2000 in the Citizens' Bank, $2000 in the Peoples' Bank, and the remainder, $2630 in the Farmers' Trust Company. The treasurer deposited the entire sum in the Farmers' Trust Company. In that case the deposit of the $4000 was held to have been illegal. Therefore, this deposit, which the Farmers' Trust Company knew was unauthorized, was declared to have been a trust fund.

The theory upon which the relation of trustee *ex maleficio* and *cestui que trust* is created by law, between banks and counties or school districts, is that the deposit, at the time it was made, was not protected by bond. [Mitchell v. Bank of Ava, 333 Mo. 960, 65 S. W. (2d) 99, 1. c. 102 (2, 3); Boone County v. Cantley, 330 Mo. 911, 51 S. W. (2d) 56, 1. c. 58 (5-8).] Or for some other reasons the bank had not been legally named as a depositary. [In re Cameron Trust Co., 330 Mo. 1070, 51 S. W. (2d) 1025, 1. c. 1026 (1, 2, 3).] The law in such cases in effect says to the parties, you were knowingly dealing with trust funds belonging to the public in an illegal manner and in such a way that its safety was endangered. Therefore, title to the funds never passed from the county or school districts, and the bank automatically became a trustee *ex maleficio* of the funds. Cases to this effect are numerous. [In re Cameron Trust Co., supra; Huntsville Trust Co. v. Noel, 321 Mo. 749, 12 S. W. (2d) 751; Harrison Township v. People's State Bank, 329 Mo. 968, 46 S. W. (2d) 165; also, in the matter of the liquidation of the First Savings Bank of Palmyra, 336 Mo. 675, 80 S. W. (2d)

861.] In the case at bar the defendant bank was legally a depositary of the county funds. Its bond stood as a protection to the public, safeguarding the funds against loss. While the bank, receiving less than its proportionate share of the funds, had a right to complain, public interest was not at stake. A larger deposit in a bank than the amount bid for, as long as it is within the amount protected by the bond, cannot be considered such an illegal deposit as to render the bank a trustee *ex maleficio.* Cases cited, supra. The reason for invoking this principal of law is distinctly lacking in such a case.

The judgment of the circuit court is, therefore, reversed with directions to allow the total amount due as a common claim. *Cooley* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.